CITY OF HAMILTON et al., Appellees and Cross–Appellants,

v.

FAIRFIELD TOWNSHIP, n.k.a. City of Indian Springs,
et al., Appellants and Cross–Appellees.

[Cite as *Hamilton v. Fairfield Twp.* (1990), 112 Ohio App.3d 255.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA95–05–085, CA95–05–088 and CA95–09–148.

Decided July 1, 1996.

*Gary L. Sheets,* Hamilton City Law Director, for appellee and cross-appellant city of Hamilton.

*Morgenstern & Gates Co., L.P.A., Roger S. Gates* and *Maxwell N. Wear,* for appellant and cross-appellee Fairfield Township, n.k.a. Indian Springs.

POWELL, Judge.

This appeal concerns whether R.C. 709.50 violates several provisions of the Ohio Constitution. The General Assembly enacted R.C. 709.50 on May 26, 1994

as Am.Sub.S.B. No. 264. The statute became effective on September 29, 1994 and provides as follows:

"(A) Notwithstanding any other section of the Revised Code, when a township contains at least ninety per cent of the geographic area of a municipal corporation, either that township or the municipal corporation may remove that part of that township that is located within the municipal corporation from that township if all of the following apply:

"(1) The electors of the township and the municipal corporation have voted to approve the establishment of a merger commission pursuant to section 709.45 of the Revised Code.

"(2) The unincorporated territory of the township has a population of more than nine thousand.

"(3) The township has previously adopted the limited self-government form of township government under Chapter 504. of the Revised Code and a township zoning resolution under Chapter 519. of the Revised Code.

"(4) Not later than December 31, 1994, either the township adopts a resolution or the municipal corporation adopts a resolution or ordinance to remove that part of the township that is located in the municipal corporation from the township. Any resolution or ordinance adopted under division (A)(4) of this section shall include an accurate description of the land to be removed. The political subdivision that adopts an ordinance or resolution under division (A)(4) of this section shall file with the county recorder a copy of it certified by the county auditor, together with a map or plat certified by the county auditor of the land to be removed. The county recorder shall record the ordinance or resolution and the map or plat.

"(B) If either the township or the municipal corporation takes the action described in division (A)(4) of this section, the removal shall occur. After the removal, the unincorporated territory of the township shall no longer receive any revenue by virtue of its relationship to the municipal corporation. As soon as practicable after a removal occurs under this section, the board of county commissioners shall ascertain whether there is any joint indebtedness of the unincorporated territory of the township and the municipal corporation. If there is any such indebtedness, the board of county commissioners shall apportion it in accordance with section 503.10 of the Revised Code.

"(C)(1) If a removal occurs under this section, all or part of the unincorporated territory of the township may become a village if the board of township trustees adopts, by unanimous vote, a resolution for all or part of that territory to become a village. The board of township trustees shall file with the county recorder a copy of any resolution it adopts under division (C)(1) of this section certified by

the county auditor, together with a map or plat certified by the county auditor of the land to be included in the village. The county recorder shall record the resolution and the map or plat. Once the board adopts a resolution under division (C)(1) of this section, no land within the area that will constitute the village may be annexed, and any pending annexation proceeding that includes land in that area shall be considered to be terminated with regard to that land.

"(2) If the board does not adopt a resolution under division (C)(1) of this section, or if the board adopts such a resolution in which only a part of the unincorporated territory becomes a village, the board of county commissioners shall attach all the unincorporated territory that does not become a village to any township contiguous to that territory or erect that territory into a new township, the boundaries of which need not include twenty-two square miles of territory.

"(D) If a board of township trustees adopts a resolution under division (C)(1) of this section for all or part of the township's unincorporated territory to become a village, the board shall serve as the legislative authority of the area constituting the village until the next regular municipal election that occurs at least seventy-five days after the adoption of the resolution. At that election, the legislative authority of the village shall be elected under section 731.09 of the Revised Code and all other officers of the village shall be elected under Chapter 733. of the Revised Code."

On September 29, 1994, the Fairfield Township Board of Trustees terminated the R.C. Chapter 504 form of optional limited self-government Fairfield Township was operating under at that time. The trustees passed Resolution 94–70, which removed the city of Fairfield from Fairfield Township pursuant to R.C. 709.50(A). That same day, the trustees also passed Resolution 94–71, by which they incorporated the remaining portions of Fairfield Township into the village of Indian Springs pursuant to R.C. 709.50(C). The Ohio Secretary of State subsequently certified Indian Springs as a city pursuant to R.C. 703.011.

Prior to the incorporation of Indian Springs, the owners of 1,037.3 acres of property located within the formerly unincorporated portion of Fairfield Township filed a petition to annex the property to the city of Hamilton. The petition for annexation was denied by the Butler County Commissioners. The annexation petitioners appealed the commissioners' decision to the Butler County Court of Common Pleas pursuant to R.C. Chapter 2506. No decision has yet been rendered in that case.

Hamilton also filed a separate petition to annex one hundred ten acres of county-owned property, which is also located within the boundaries of Indian Springs. However, this petition was terminated pursuant to R.C. 709.50(C)(1) before any action could be taken on the petition.

On September 28, 1994, Hamilton, the annexation petitioners' statutory agent, Gary L. Sheets, and Indian Springs resident Clarence Wilder filed a declaratory judgment action in the Butler County Court of Common Pleas. The complaint contained ten counts, which alleged that R.C. 709.50 violated several provisions of the Ohio Constitution. The trial court granted *pro se* motions to intervene filed by two additional residents of Indian Springs, Joseph Ebbing and James Samples.

The parties subsequently filed cross-motions for summary judgment. The trial court issued a lengthy opinion in which it examined the constitutional issues presented by each count of the complaint. The trial court held that R.C. 709.50 violates the following provisions of the Ohio Constitution: (1) the Self–Governance Clause of Section 2, Article I; (2) the Due Process Clause of Section 16, Article I; (3) Section 28, Article II, which prohibits retroactive legislation; (4) Section 1, Article XVIII, which classifies villages as those municipal corporations with a population of five thousand people or fewer; and (5) Section 2, Article XVIII, which prohibits special laws for the incorporation and governance of cities and villages.

The trial court held that R.C. 709.50 does not violate the following provisions of the Ohio Constitution: (1) the Equal Protection Clause of Section 2, Article I; (2) the Open Courts provision of Section 16, Article I; and (3) the Contracts Clause of Section 28, Article II. The trial court also held that R.C. 709.50 does not violate the Due Process Clause of the United States Constitution.

The trial court issued a permanent injunction in which it prohibited Indian Springs from operating as a city. However, the trial court also issued a stay in which it permitted Indian Springs to continue operating as a city during the pendency of this appeal.

Indian Springs now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred in granting plaintiffs' motion for summary judgment as to Count One of the amended complaint."

Assignment of Error No. 2:

"The trial court erred in granting plaintiffs' motion for summary judgment as to Count Seven of the amended complaint."

Assignment of Error No. 3:

"The trial court erred in granting plaintiffs' motion for summary judgment as to Count Eight of the amended complaint."

Assignment of Error No. 4:

"The trial court erred in partially granting plaintiffs' motion for summary judgment as to Counts Four and Five of the amended complaint."

Hamilton also cross-appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff/cross-appellants by including within the stay granted to defendants-cross-appellees a determination upon an issue not presented to the court."

Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiffs/cross-appellants in failing to conclude that the timing of the incorporation of Indian Springs pursuant to R.C. 709.50(C) was irreconcilably inconsistent with R.C. 504.03."

Assignment of Error No. 3:

"The trial court erred to the prejudice of plaintiffs/cross-appellants in granting cross-appellee's motion for summary judgment and in denying cross-appellant's motion for summary judgment on Count 3 of the amended complaint."

Assignment of Error No. 4:

"The trial court erred in granting cross-appellees' motion for summary judgment and in denying cross-appellants' motion for summary judgment on Count 2 of the amended complaint."

■ In its first assignment of error, Indian Springs contends that the trial court erred in finding that R.C. 709.50 violates the Self–Governance Clause of Section 2, Article I of the Ohio Constitution. Section 2, Article I provides as follows:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

■ The first issue we must consider under this assignment of error is whether the trustees' decision to discontinue the township form of optional limited self-government and incorporate Indian Springs pursuant to R.C. 709.50 altered, reformed, or abolished government within the meaning of Section 2, Article I. The Ohio Supreme Court considered whether a township and a municipal corporation are legally distinct forms of government in *Carroll v. Washington Twp. Zoning Comm.* (1978), 56 Ohio St.2d 164, 10 O.O.3d 337, 383 N.E.2d 569. The court held:

"The words 'municipal corporation' and 'township' in their legal usage consistently have been recognized as possessing distinctly different meanings. This distinction is evident in the Ohio Constitution. Article X of the Ohio Constitution provides for the organization of townships, while municipal corporations are addressed in Article XVIII of the Ohio Constitution. This distinction continues within the Revised Code. Title 7 of the Revised Code relates to municipal corporations, and the provisions applicable to townships are contained in Title 5 of the Revised Code. * * * Clearly, in Ohio, a township can not be a municipal corporation." *Id.* at 166–167, 10 O.O.3d at 338–339, 383 N.E.2d at 571.

■ As the Supreme Court recognized in *Carroll,* the township and municipal corporation forms of community government are legally distinct entities from both a constitutional and a statutory perspective. Therefore, it is apparent that the trustees' unilateral decision to discontinue the township form of optional limited self-government and incorporate Indian Springs altered, reformed, or abolished government within the meaning of Section 2, Article I.

The second issue we must consider under this assignment of error is whether Section 2, Article I of the Ohio Constitution requires the assent of the local electorate before a township form of optional limited self-government may be discarded and a municipal corporation formed in its place. Section 2, Article I grants the people of the state of Ohio the right to alter, reform, or abolish government as they may deem it necessary. Inherent in this right is the power to discontinue or change the structure of state government in all its forms in accordance with the lawful procedures established by the Ohio Constitution.

■ Townships and municipal corporations are political subdivisions and as such are charged with performing many of the governmental functions essential to an ordered society. These political entities are consequently "government" within the meaning of Section 2, Article I and are thus subject to the same right of the people to alter, reform, or abolish government as they may deem it necessary. It is only logical then that the assent of the electorate is required before a township form of local government may be discontinued and a municipal corporation formed in its place. Consequently, the Self–Governance Clause of Section 2, Article I requires that the electors of a proposed municipal corporation vote or otherwise give their assent by petition of a majority of the electors before a township form of government may be discarded in favor of a municipal corporation.

Our conclusion that Section 2, Article I entitles the electors to vote or otherwise give their assent before a municipal corporation may be formed is supported by the manner in which the General Assembly has historically exercised its power to regulate the process of municipal incorporation. R.C. Chapter

707 was the exclusive body of law governing the incorporation of villages and cities prior to the enactment of R.C. 709.50. R.C. 707.02 and 707.04 provide that a community may incorporate where a majority of the electors within the territory of the proposed municipality give their assent to the incorporation by signing a petition which is filed with the county commissioners and all existing municipal corporations located within three miles of the boundaries of the proposed municipality consent to the incorporation by their legislative bodies passing resolutions approving the petition.

A second process of incorporating a new city where the existing municipal corporations within three miles refuse to approve the R.C. 707.02 petition likewise requires the assent of the electorate. R.C. 707.29 and R.C. 707.30 codify the alternate procedures governing the incorporation of cities. R.C. 707.30 provides that a community which meets the minimum requirements for incorporation as a city under R.C. 707.29 must hold a special election on the issue of municipal incorporation. The electors of the proposed city may vote on the issue of incorporation at the election and thereby give or withhold their assent to the incorporation. A petition for incorporation as a city under this alternate procedure may not be granted unless a majority of the electors voting in the election approve the proposed incorporation. See R.C. 707.30(D).

■ Indian Springs nevertheless argues that R.C. 709.50 is constitutional because the people have delegated their power to alter, reform, or abolish local government to the General Assembly, which in turn delegated it to the township trustees. We disagree. The Ohio Supreme Court has defined the extent to which the political power reserved unto the people under Section 2, Article I, may be delegated to government as follows:

" 'All political power is inherent in the people.' This is the genesis of all American government. This identical language is in the Ohio Bill of Rights (Section 2, Art. I), and in syllable or spirit it is found in all the state Constitutions. That 'political power' not only resides in the people, but remains with them until they have delegated it to some department of their state government, or some subdivision thereof. The delegation of political power is either expressed or implied; but it must always be remembered that implied powers delegated must be such as are naturally or necessarily incidental or auxiliary to the express power, and, as such, the implied power cannot be in any wise destructive of, or in conflict with, an express delegation of power.

"Express *delegations* of political power are made *through constitutional provisions,* and are necessarily exclusive delegations of power, unless it be expressly provided otherwise. One of the earliest cases in Ohio dealing with this provision of our Bill of Rights is *Cincinnati, Wilmington & Zanesville Rd. Co. v. Commrs.*

*of Clinton County,* 1 Ohio St. 77, in which, in a masterly opinion, Judge Ranney, at page 85, speaks as follows:

" 'They [the people] have, therefore, the most undoubted right to delegate just as much, or just as little, of this political power with which they are invested as they see proper, and to such agents or departments of government as they see fit to designate. To the Constitution we must look for the manner and extent of this delegation; and from that instrument alone must every department of the government derive its authority to exercise any portion of political power.' " (Emphasis added.) *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 253, 140 N.E. 595, 597–598.

It is certainly true that Section 2, Article XVIII grants the General Assembly plenary power to enact general laws regulating the process of municipal incorporation. However, there is nothing in the Ohio Constitution which indicates that the people have in any way delegated to the General Assembly or township trustees their inherent power to decide whether a municipal corporation is the form of local government which best suits the needs of their community. Indian Springs' contention that R.C. 709.50 represents a valid delegation of the political power reserved unto the people under Section 2, Article I is consequently without merit.

In sum, we hold that R.C. 709.50 violates Section 2, Article I, Ohio Constitution by permitting township trustees to unilaterally alter, reform, or abolish a township form of local government and replace it with a municipal corporation without first obtaining the assent of the electorate. Indian Springs' first assignment of error is overruled. We now turn our attention to the remaining constitutional issues presented for review by this appeal.

■ In its second assignment of error, Indian Springs contends that the trial court erred in finding that R.C. 709.50 violates Section 1, Article XVIII, Ohio Constitution, which provides as follows:

"Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law."

R.C. 707.02 was the exclusive statute authorizing the incorporation of villages prior to the enactment of R.C. 709.50.[1] R.C. 707.02 permits a community whose

---

1. Prior to 1978, R.C. 707.02 was the only way to create a municipal corporation. In 1978, the legislature adopted the first version of R.C. 707.29 (then 707.04, Am.Sub.H.B. No. 218, 137 Ohio Laws, Part II, 2084). R.C. 707.04(B) then and now requires incorporation petitioners to submit a copy of a resolution of consent of the legislative body of all municipalities within three miles of the petition boundaries. If any one municipality refuses to consent, then the

population exceeds five thousand people or even nine thousand people to incorporate as a village provided that a majority of the community's electors manifest their assent to the incorporation by signing a petition and the petition is approved by the legislative bodies of all existing municipal corporations within a three-mile radius. There is a population minimum of one thousand six hundred people in R.C. 707.02, but there is not now, nor has there ever been, a population cap of five thousand on creating a new municipality. R.C. 707.08 directs that if the commissioners approve the petition, they certify the municipality as a village to the recorder's office. Thereafter, the municipality, as are all municipalities, is either a village or a city based on R.C. 703.01 or 703.011 as authorized by Section 1, Article XVIII, as discussed below.

R.C. 709.50 likewise permits a community whose population exceeds nine thousand people to incorporate as a village. R.C. 709.50(A)(2) provides that township trustees may remove the incorporated area of a township where the unincorporated portion of the township has a population of more than nine thousand people. R.C. 709.50(C)(1) then permits the township trustees to incorporate all or part of the previously unincorporated portion of the township into a village. Hamilton argues that R.C. 709.50(A)(2) and (C)(1) collectively violate Section 1, Article XVIII by permitting the trustees to incorporate a village with a population in excess of five thousand people.

Section 1, Article XVIII grants the General Assembly plenary power to regulate the manner by which a municipal corporation is transformed from village to city status. See *Murray v. State ex rel. Nestor* (1915), 91 Ohio St. 220, 230, 110 N.E. 471, 474. The General Assembly exercised this power by enacting R.C. 703.01 and 703.011, which provide, in part, as follows:

---

county commissioners are required to deny the petition. R.C. 707.29 (previously part of R.C. 707.04) is the exception to the three-mile consent rule and allows certain communities to proceed with incorporation if they meet more stringent population (twenty-five thousand minimum), density (one thousand per square mile), and tax base criteria and if they hold a special election in which the electors approve the incorporation of the city. The only difference between the first version of R.C. 707.29 *et seq.* and the current version is that in the first, after the special election, the petition went back to the county commission, while under the new version the election results are final.

R.C. 707.29 *et seq.* is not the exclusive method of incorporating a municipality with a population in excess of twenty-five thousand people. Such a community may proceed under R.C. 707.02, provided it secures the consent of all neighboring municipalities within three miles. Communities over five thousand but under twenty-five thousand may still incorporate as long as they secure all the consents. If they cannot secure all the consents, then they must either redraw the boundary lines of their proposed municipality (so that they are beyond the three-mile limit) or wait until their population grows to twenty-five thousand. The only difference between the two incorporation procedures in this regard is that R.C. 707.29 bypasses R.C. 703.01 and 703.011, while R.C. 707.02 does not.

"703.01. Municipal corporations, which, at the last federal census, had a population of five thousand or more, or five thousand registered resident electors or resident voters as provided in section 703.011 of the Revised Code, are cities. All other municipal corporations are villages. Cities, which, at any federal census, have a population of less than five thousand, shall become villages. Villages, which, at any federal census, have a population of five thousand or more, shall become cities."

"703.011. In addition to the method of determining classifications of municipal corporations set out in section 703.01 of the Revised Code, villages, which at the most recent general election had more than five thousand resident electors registered with the board of elections of the county in which the village is situated or, when more than five thousand resident electors have voted at the most recent general election, in such village, shall become cities. In such case, the board of elections of the said county shall immediately certify to the secretary of state the number of resident electors registered or voting within said village, and the secretary of state, upon receiving said certification from the board of elections, certifying that there are five thousand or more resident electors registered or voting within said village, shall issue a proclamation to that effect. * * * Thirty days after the issuance of the proclamation the village shall be a city."

R.C. 703.01 and 703.011 provide a convenient and workable means by which those villages whose populations exceed the five-thousand-person limitation specified by Section 1, Article XVIII are reclassified as cities. R.C. 707.02 and 709.50 when read in conjunction with R.C. 703.01 and 703.011 permit a community with a population of more than five thousand people, or in the case of R.C. 709.50 nine thousand people, to incorporate as a village pending the next general election or federal census, at which time the village will be reclassified as a city.

We believe that this statutory scheme does not violate Section 1, Article XVIII because, as a matter of law, any village which has a population in excess of five thousand people and is eligible for incorporation under either R.C. 707.02 or 709.50 will automatically be reclassified as a city at the next federal census or general election. Consequently, the special incorporation procedures authorized by R.C. 709.50 do not circumvent the five-thousand-person population ceiling mandated by Section 1, Article XVIII any more than the traditional incorporation procedures codified in R.C. 707.02.

Accordingly, the trial court erred in finding that R.C. 709.50 violates Section 1, Article XVIII, Ohio Constitution. Indian Springs' second assignment of error is well taken and is sustained. The trial court's judgment finding that R.C. 709.50 violates Section 1, Article XVIII is hereby vacated.

In its third assignment of error, Indian Springs argues that the trial court erred in finding that R.C. 709.50 violates Section 2, Article XVIII, Ohio Constitution because it is a "special law" governing municipal incorporation. Section 2, Article XVIII provides as follows:

"General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same; but no such additional law shall become operative in any municipality until it shall have been submitted to the electors thereof, and affirmed by a majority of those voting thereon, under regulations to be established by law."

Section 2, Article XVIII prohibits the General Assembly from enacting special laws which provide for the incorporation of cities and villages. A statute is a special law where it relates to a subject matter which "cannot exist in, or affect the people of every county." See *State ex rel. Saxbe v. Alexander* (1959), 168 Ohio St. 404, 407, 7 O.O.2d 251, 252, 155 N.E.2d 678, 680; *Hixson v. Burson* (1896), 54 Ohio St. 470, 481, 43 N.E. 1000, 1001–1002.

R.C. 709.50 permits township trustees to form a municipal corporation where the township (1) has adopted a merger commission pursuant to 709.45, (2) has adopted the form of optional limited self-government codified in R.C. Chapter 504, (3) has adopted a township zoning resolution pursuant to R.C. Chapter 519, (4) has a population of more than nine thousand people in the unincorporated portion of the township, and (5) has more than ninety percent of the geographic area of an existing municipal corporation within the township's boundaries. R.C. 709.50 was passed by the General Assembly on May 26, 1994 as Am.Sub.S.B. No. 264 and subsequently signed by the Governor on June 30, 1994. 145 Ohio Laws, Part II, 2407, 2412, 2429. The statute then took effect on September 29, 1994. Indian Springs claims that R.C. 709.50 is a general law because fourteen townships besides Fairfield Township could have utilized its special incorporation procedures before the statute's sunset date of December 31, 1994 barred any further incorporation. R.C. 709.50(A)(4).

However, the evidence presented by the parties in this case unquestionably demonstrates that Fairfield Township was the only township within the state of Ohio which could have incorporated under R.C. 709.50 prior to the statute's sunset date. The record indicates that nine of the fourteen townships Indian Springs alleges were eligible for incorporation under R.C. 709.50 had not adopted either a merger commission or the optional form of limited self-government by the statute's effective date. Additionally, four of the five remaining townships had not adopted a merger commission and one township had not adopted the optional form of limited self-government.

Indian Springs nevertheless argues that these townships could have satisfied all of the requirements of R.C. 709.50 by adopting a merger commission, the optional form of limited self-government, or both before the sunset provision took effect. Again, we must disagree.

R.C. 504.01 permits a board of township trustees to pass a resolution "causing the board of elections to submit to the electors of the unincorporated area of the township the question of whether the township should adopt the limited self-government form of township government." The question is then placed on the ballot at a general election, which may occur no sooner than seventy-five days after the resolution is certified to the board of elections. R.C. 504.01. The township form of optional limited self-government is adopted if a majority of the electors voting in the general election give their assent. R.C. 504.02(C).

R.C. 709.45 likewise permits a township and a municipal corporation to jointly adopt a merger commission by submitting a petition signed by ten percent of the electors to the board of elections. The question whether a merger commission should be formed is then placed on the ballot at a general election, which may occur no sooner than seventy-five days after the petition is filed with the board of elections. R.C. 709.45. A merger commission is subsequently formed if a majority of the electors voting in the general election give their assent. R.C. 709.46.

R.C. 3501.01(A) provides that a general election may be held on "the first Tuesday after the first Monday in each November." R.C. 709.50 became effective on September 29, 1994 and authorized township trustees to form a municipal corporation by passing the appropriate resolutions for a period of ninety-four days until the statute's sunset date of December 31, 1994 barred any further incorporation. The only general election which was held during this ninety-four-day period occurred on November 8, 1994, forty days after R.C. 709.50 took effect. As a practical matter, there is simply no way that any of the fourteen townships cited by Indian Springs could have qualified for incorporation under R.C. 709.50, because the seventy-five-day waiting periods specified by R.C. 504.01 and 709.45 would have precluded these townships from placing the issues of whether a merger commission or the optional form of limited self-government should be adopted on the November 8, 1994 ballot.

It is therefore apparent to the members of this court that R.C. 709.50 is a special law which was passed by the General Assembly for the sole purpose of permitting the trustees to unilaterally incorporate Indian Springs without first obtaining the assent of the electorate. Accordingly, the trial court properly found that R.C. 709.50 violates Section 2, Article XVIII of the Ohio Constitution. Indian Springs' third assignment of error is overruled.

■ In its fourth assignment of error, Indian Springs contends that the trial court erred in finding that R.C. 709.50(C)(1) violates the annexation petitioners' right to procedural due process under Section 16, Article I of the Ohio Constitution. The Due Process Clause of Section 16, Article I requires that an individual be afforded proper notice and an opportunity to be heard before the state may infringe a protected liberty or property interest. *Williams v. Dollison* (1980), 62 Ohio St.2d 297, 299, 16 O.O.3d 350, 351, 405 N.E.2d 714, 715–716. Hamilton and the annexation petitioners argue that R.C. 709.50(C)(1) violates procedural due process by terminating the pending annexation appeal without prior notice and an opportunity to be heard.

■ The first step in determining what protections are afforded by due process is to ascertain whether the state action at issue affects a constitutionally protected liberty or property interest. See *Lee v. Cuyahoga Cty. Court of Common Pleas* (1991), 76 Ohio App.3d 620, 622, 602 N.E.2d 761, 762–763; *State v. Hochhausler* (May 22, 1995), Warren App. No. CA93–12–104, unreported, 1995 WL 308484. A right of appeal which is granted by rule of court or statute is a property interest which is protected by the Due Process Clause of the Ohio Constitution. *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 84–85, 523 N.E.2d 851, 855–856; *Kertes Ent., Inc. v. Orange Village Planning Zoning Comm.* (1990), 71 Ohio App.3d 151, 152, 593 N.E.2d 306, 306–307. R.C. Chapter 2506 permits landowners to appeal a decision by county commissioners denying an annexation petition to the court of common pleas. See *In re Petition to Annex 320 Acres to the Village of S. Lebanon* (1992), 64 Ohio St.3d 585, 586, 597 N.E.2d 463, 464, fn. 1. The record shows that the annexation petitioners filed a R.C. Chapter 2506 appeal from the commissioners' decision denying their petition in the Butler County Court of Common Pleas prior to the incorporation of Indian Springs. Therefore, we find that R.C. 709.50(C)(1) infringes a constitutionally protected property interest by terminating the petitioners' annexation appeal, which was pending at the time the trustees voted to incorporate Indian Springs.

The second step in our due process analysis is to determine whether R.C. 709.50 provides adequate notice and an opportunity to be heard to the annexation petitioners. R.C. 709.50(A) and (C)(1) provide that the board of township trustees may remove the incorporated portion of the township and incorporate the previously unincorporated portion as a village. R.C. 709.50(C)(1) further provides that "no land within the area that will constitute the village may be annexed, and any annexation proceeding that includes land in that area shall be considered to be terminated with regard to that land."

R.C. 709.50(C)(1) makes no attempt whatsoever to provide the annexation petitioners with notice or an opportunity to be heard before terminating their right to file and prosecute an R.C. Chapter 2506 appeal. The statute simply

terminates any annexation proceedings which are pending at the time the trustees vote to incorporate, regardless of what stage the annexation proceedings are in at the time the incorporation occurs. It is our belief that the Due Process Clause exists to prohibit this type of unilateral, automatic deprivation of a recognized property interest such as an R.C. Chapter 2506 right of appeal. Accordingly, we hold that R.C. 709.50 violates the Due Process Clause of Section 16, Article I of the Ohio Constitution by terminating the annexation petitioners' appeal without giving them prior notice and an opportunity to be heard.

■■■ Indian Springs next argues that the trial court erred in finding that R.C. 709.50(C)(1) violates Section 28, Article II of the Ohio Constitution by retroactively terminating the annexation proceedings pending at the time it took effect on September 29, 1994. Section 28, Article II provides as follows:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

■■■ In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, the Ohio Supreme Court articulated a two-step retroactivity analysis which we must apply in order to determine whether R.C. 709.50(C)(1) is unconstitutionally retroactive. The first prong of the *Van Fossen* test requires a court to examine the language of the challenged statute and determine whether the General Assembly intended the statute to have retroactive effect. *Id.* at 105–106, 522 N.E.2d at 494–496. The second prong of the *Van Fossen* test requires a court to determine whether the statute affects a substantive right or a right which is remedial or procedural in nature. *Id.* at 106–108, 522 N.E.2d at 495–498. Statutes which retroactively affect substantive rights violate the constitutional ban on retroactive legislation, while statutes affecting rights which are merely remedial or procedural in nature do not. *Id.* See, also, *Wean Incorporated v. Indus. Comm.* (1990), 52 Ohio St.3d 266, 268, 557 N.E.2d 121, 123–124.

■■■ Applying the *Van Fossen* test, we must first consider whether R.C. 709.50 was intended to have retroactive effect. A statute is intended to apply retroactively where its language makes it applicable to pending cases or administrative proceedings. See *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d at 495–496; *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 356, 533 N.E.2d 743, 745–746. R.C. 709.50(C)(1) states that upon the incorporation of the village "no land within the area that will constitute the village may be annexed, and any pending annexation proceeding that includes land in that area shall be considered

to be terminated with regard to that land." The General Assembly consequently gave R.C. 709.50(C)(1) retroactive effect by expressly stating that the statute applies to pending annexation proceedings.

■ The second prong of the *Van Fossen* test requires us to determine whether R.C. 709.50 affects a substantive right. A statute affects a substantive right when it does any of the following:

" 'impairs or takes away vested rights, * * * affects an accrued substantive right, * * * imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, * * * creates a new right out of an act which gave no right and imposed no obligation when it occurred, * * * creates a new right, * * * [or] gives rise to or takes away the right to sue or defend actions at law.' " *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154, 161, quoting *Van Fossen,* 36 Ohio St.3d at 106–107, 522 N.E.2d at 495–496.

As we have already noted, R.C. Chapter 2506 permits annexation petitioners to appeal an adverse decision on their petition by the county commissioners to the court of common pleas. The right to prosecute an R.C. Chapter 2506 annexation appeal to its conclusion becomes a vested substantive right once the appeal is actually filed in the court of common pleas. R.C. 709.50(C)(1) retroactively impairs this substantive right by terminating any annexation proceedings which are pending at the time the trustees vote to incorporate. Accordingly, the trial court properly found that R.C. 709.50 violates Section 28, Article II of the Ohio Constitution. Indian Springs' fourth assignment of error is overruled. We now turn our attention to the remaining assignments of error presented by Hamilton's cross-appeal.

■ In its first assignment of error on cross-appeal, Hamilton contends that the trial court improperly permitted Indian Springs to continue operating as a city during the pendency of this appeal. Hamilton argues that the trial court erred in including the following language in its order staying the permanent injunction:

"The status quo of Indian Springs shall include the full faith and credit on all contracts and undertakings in the past by the Township Trustees acting as the legislative authority of Indian Springs, but does not nclude [*sic* ] ultimate liability on these same contracts and undertakings."

Civ.R. 62 requires a trial court to issue a stay where a township or other political subdivision appeals the court's decision. *State ex rel. Ocasek v. Riley* (1978), 54 Ohio St.2d 488, 490, 8 O.O.3d 466, 467, 377 N.E.2d 792, 793–794. A court has broad discretion incident to Civ.R. 62 to issue any order necessary to preserve the status quo while the stay is in effect. See *Dayton City School Dist.*

*Bd. of Edn. v. Dayton Edn. Assn.* (1992), 80 Ohio App.3d 758, 760, 610 N.E.2d 615, 615–616.

As our decision indicates, this case presents numerous, complex questions of state constitutional law which are ripe for review by this court. The trial court properly recognized that some political authority must continue to govern the territory which comprises Indian Springs during the pendency of this appeal. The trial court consequently acted well within the scope of its discretionary authority in permitting Indian Springs to continue operating as a city while this appeal was pending. Therefore, we find no error by the trial court. Hamilton's first assignment of error on cross-appeal is overruled.

■ In its second assignment of error on cross-appeal, Hamilton contends that R.C. 504.03(A)(1) and 709.50 irreconcilably conflict. R.C. 504.03(A)(1) provides, in part, as follows:

"If the limited self-government form of township government is adopted pursuant to section 504.02 of the Revised Code, it shall remain in effect for at least three years except as otherwise provided in division (B) of this section. At the end of that period, if the board of township trustees determines that such form of government is not in the best interests of the township, it may adopt a resolution causing the board of elections to submit to the electors of the unincorporated area of the township the question of whether the township should continue the limited self-government form of township government."

Hamilton argues that R.C. 709.50 conflicts with R.C. 504.03(A)(1) because R.C. 709.50 permits township trustees to incorporate a village before the expiration of the mandatory three-year period of optional limited self-government required by R.C. 504.03(A)(1). We are not persuaded.

R.C. 504.03(A)(1) merely requires a township which has adopted the optional form of limited self-government pursuant to R.C. 504.02 to continue operating under that form of government for a period of three years before it may revert to the statutory form of township government codified in R.C. Chapter 503. R.C. 504.03(A)(1) does not prohibit a township which has adopted the optional form of limited self-government from incorporating pursuant to R.C. 707.02, 707.29, or 709.50 before the expiration of the initial three-year period. Accordingly, we find no conflict between R.C. 504.03(A)(1) and 709.50. Hamilton's second assignment of error on cross-appeal is overruled.

■ In its third assignment of error on cross-appeal, Hamilton argues that R.C. 709.50(C)(1) violates its right to procedural due process by terminating a petition to annex one hundred ten acres of county-owned property located within Indian Springs which it filed with the Butler County Commissioners on September 29, 1994. The protections afforded by the Due Process Clause of the Ohio

Constitution do not apply to municipal corporations or other political subdivisions. See *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 121–122, 518 N.E.2d 1190, 1192–1194. Hamilton's contention that R.C. 709.50(C) violates its right to procedural due process by terminating its annexation petition without prior notice and an opportunity to be heard is without merit because no such right exists. Hamilton's third assignment of error on cross-appeal is overruled.

In its fourth assignment of error on cross-appeal, Hamilton contends that R.C. 709.50 violates the Equal Protection Clause of Section 2, Article I of the Ohio Constitution. Equal protection under the law requires that no person or class of persons shall be denied the protection afforded by the law to other persons or classes in like circumstances. *Huntington Natl. Bank v. Limbach* (1994), 71 Ohio St.3d 261, 262, 643 N.E.2d 523, 523–524. However, the Equal Protection Clause does not prevent all classifications. *Toledo v. Wacenske* (1994), 95 Ohio App.3d 282, 287, 642 N.E.2d 407, 410–411. It simply forbids laws which treat persons differently who are alike in all relevant respects. *Id.*

The first step in our equal protection analysis is to determine the appropriate standard of review. Statutes which deprive a certain class of individuals of a fundamental right are subject to a strict-scrutiny test, while statutes which do not need only be rationally related to some legitimate governmental interest. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 289, 595 N.E.2d 862, 866–867; *Cincinnati City School Dist. Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 373–374, 12 O.O.3d 327, 330–331, 390 N.E.2d 813, 817–818. A statutory classification which infringes a fundamental right may survive strict scrutiny only if it is "necessary to promote a compelling governmental interest." *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 425, 633 N.E.2d 504, 512; *Preterm Cleveland v. Voinovich* (1993), 89 Ohio App.3d 684, 700, 627 N.E.2d 570, 580–581.

As we have already noted in our discussion of Indian Springs' first assignment of error, the right to vote or otherwise choose whether to form a municipal corporation is a fundamental right that is guaranteed by Section 2, Article I of the Ohio Constitution. R.C. 709.50 deprives the electors of Indian Springs of the right to vote or otherwise choose whether to form a municipal corporation while permitting the electors of other similarly situated communities to do so. Therefore, we find that R.C. 709.50 is subject to strict scrutiny because it creates a statutory classification which adversely affects a fundamental right.

The second step in our equal protection analysis is to apply the strict-scrutiny test and determine whether R.C. 709.50 is necessary to promote some compelling governmental interest. Indian Springs advances several governmental interests which it alleges justify the special incorporation procedures set forth in R.C. 709.50. However, the record before us unmistakably indicates that R.C. 709.50

was passed by the General Assembly for the sole purpose of permitting the trustees to form a municipal corporation without first obtaining the assent of the township's electorate. There is simply no way that this is a compelling or even a legitimate state interest. Accordingly, we find that R.C. 709.50 violates the Equal Protection Clause of the Ohio Constitution. Hamilton's fourth assignment of error on cross-appeal is sustained.

To summarize, we hold that R.C. 709.50 violates the following provisions of the Ohio Constitution: (1) the Self–Governance Clause of Section 2, Article I; (2) Section 2, Article XVIII, which prohibits special laws for municipal incorporation; (3) the Due Process Clause of Section 16, Article I; (4) the Section 28, Article II prohibition on retroactive legislation; and (5) the Equal Protection Clause of Section 2, Article I.

We also hold that R.C. 709.50 does not violate Section 1, Article XVIII of the Ohio Constitution, that R.C. 709.50 and 504.03(A)(1) do not conflict, and that the trial court did not abuse its discretion in staying its order prohibiting Indian Springs from operating as a city pending appeal.

Based upon the foregoing, the judgment of the trial court prohibiting Indian Springs from operating as a city is hereby affirmed.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and KOEHLER, J., concur.