BOARD OF LUCAS COUNTY COMMISSIONERS, Appellant,

v.

WATERVILLE TOWNSHIP BOARD OF TRUSTEES
et al., Appellees and Cross–Appellants.

[Cite as *Bd. of Lucas Cty. Commrs. v. Waterville Twp. Bd.
of Trustees,* 171 Ohio App.3d 354, 2007-Ohio-2141.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–06–1074 and L–06–1091.

Decided May 4, 2007.

356

358

Julia R. Bates, Lucas County Prosecuting Attorney, John A. Borell and Karlene D. Henderson, Assistant Prosecuting Attorneys, for appellant.

R. Michael Frank, for appellees and cross-appellants Anton J. Urbas and Timothy J. Pedro.

Christopher F. Parker, for amicus curiae and cross-appellees, the petition circulators.

HANDWORK, Judge.

{¶ 1} This is appeal from a judgment of the Lucas County Court of Common Pleas.

{¶ 2} On April 11, 2003, a group of Waterville Township residents ("the circulators"), who are designated as cross-appellees,[1] filed a petition in which they asked the Lucas County Board of Commissioners to erect a new township pursuant to R.C. 503.09. On June 12, 2003, the board passed Resolution No. 03–808. One of the clauses in the resolution states: "[T]he Petition meets all of the requirements of R.C. 503.09." The resolution further indicates, however, that

---

1. This designation is appropriate because the circulators are appellees only as to the cross-appeal in this cause.

several residents of Waterville Township contended that R.C. 503.09 was unconstitutional and that there were conflicting appellate decisions on the constitutionality of the statute. The board therefore asked the Lucas County prosecutor to institute, pursuant to R.C. Chapter 2721, a declaratory judgment action on behalf of the board to determine the constitutionality of R.C. 503.09.

{¶ 3} The present declaratory judgment action was filed on June 12, 2003. The board named a number of defendants including the circulators and cross-appellants, Anton J. Urbas and Timothy J. Pedro. Urbas is a nonfreehold elector who has resided in Waterville Township for 26 years. Pedro is a freehold elector who has resided in the village of Waterville for ten years and is a Waterville Township trustee. In their complaint, the board asked the common pleas court to determine the constitutionality of R.C. 503.09 and "the rights, status, and legal relationship of the parties therein."

{¶ 4} Urbas and Pedro filed an answer and a counterclaim against the board, asking the court below to issue a declaratory judgment finding that R.C. 503.09 is unconstitutional because it deprived them of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Section 2, Article I, Ohio Constitution, Ohio's Self–Governance Clause. Urbas and Pedro also filed a cross-claim against the circulators in which they not only challenged the constitutionality of R.C. 503.09 but also asked the court to declare that the petitions submitted to the board by the circulators were invalid.

{¶ 5} The circulators filed an answer and a counterclaim against the board based upon the board's Resolution Nos. 02–1008 and 02–1009, both dated July 25, 2002. In Resolution No. 02–1008, the board denied a petition, filed pursuant to R.C. 503.09, to erect a new township excluding the villages of Waterville and Whitehouse because it was not signed by a majority of freehold electors in that portion of Waterville Township outside the village of Whitehouse. Resolution No. 02–1009 denied the petition because it was not signed by a majority of freehold electors in that portion of Waterville Township outside the village of Waterville. In their counterclaim, the circulators sought a decision from the common pleas court finding that Resolution Nos. 02–1008 and 02–1009 were based upon an incorrect interpretation of the law and ordering the board to adopt a Resolution granting their petition to erect a new township excluding the villages of Waterville and Whitehouse.

{¶ 6} The circulators also filed a motion for partial summary judgment in which they asked the court to find that R.C. 503.09 is constitutional. Urbas and Pedro filed a combined motion for summary judgment and memorandum in opposition to the circulators contending that no genuine issue of material fact existed on the question of whether R.C. 503.09 was unconstitutional. Both sides filed further memoranda supporting their positions on the issue.

{¶ 7} On December 30, 2004, the trial court entered a judgment declaring that R.C. 503.09 is constitutional. Urbas and Pedro filed a notice of appeal from this judgment. This court, however, found that the December 30, 2004 judgment was not a final, appealable order, because the circulators' request for a judgment ordering the board to issue a resolution to grant their petition to create a new township was not decided by the trial court. *Bd. of Lucas Cty. Commrs. v. Waterville Twp. Bd. of Trustees* (June 15, 2005), 6th Dist. No. L–05–1033. We dismissed the appeal.

{¶ 8} Subsequently, the circulators moved for summary judgment on the cross-claim asserted by Urbas and Pedro. The circulators maintained that contrary to the assertions of Urbas and Pedro, R.C. 503.09 does not contain any specific requirements for a petition in which freehold electors seek the creation of a new township. Urbas and Pedro responded by moving for summary judgment on their cross-claim. The circulators voluntarily dismissed, without prejudice, their counterclaim against the board.

{¶ 9} On January 30, 2006, the court below entered a judgment in which it determined that the circulators' petition, filed on April 11, 2003, did not meet the requirements of R.C. 503.09 because the petition was not accompanied by "a map accurately setting forth such territory" to be made into a new township. The court reasoned that it was crucial for electors to know what they were signing or voting for when they signed the petition.

{¶ 10} The board appeals the judgment of the trial court and asserts the following assignments of error:

{¶ 11} "1. The trial court lacked subject matter jurisdiction to issue the January 30, 2006 Opinion and Judgment Entry finding that the petition filed by the Circulators on April 11, 2003 was invalid, since the Appellant's Resolution No. 03–808 was not a final order in accordance with R.C. 503.09 through 503.13.

{¶ 12} "2. The trial court lacked subject matter jurisdiction to issue the January 30, 2006 Opinion and Judgment Entry finding that the petition filed by the Circulators on April 11, 2003 was invalid, since the Appellees' August 4, 2004 counterclaim and cross-claim did not comply with R.C. 307.56 an Chapters 2506.

{¶ 13} "3. Even if Appellant's Resolution No. 03–808 was a final order in accordance with R.C. 503.09 through 503.13, Appellees' August 4, 2004 counterclaim and cross-claim alleging that the Circulators' petition did not comply with state law, was not filed within the time limit found in R.C. Chapters 2506."

{¶ 14} In their cross-appeal, Urbas and Pedro set forth the following cross-assignments of error:

{¶ 15} "(a) The trial court erred in failing to find that the 'freeholder' requirement of O.R.C. 503.09 denies equal protection of the laws under the

Constitutions of Ohio and the United States to non-freehold electors who live in an unincorporated territory of a township.

{¶ 16} "(b) The trial court erred in failing to find that the requirement of O.R.C. 503.09 that only freehold electors living in the unincorporated portions of the Township can vote or be counted for the purpose of separation denies equal protection of the laws under the Constitutions of Ohio and the United States to freehold electors who reside within the township, but outside the unincorporated territory of the township.

{¶ 17} "(c) The trial court erred in failing to find that O.R.C. 503.09 violates Article I, Section 2 of the Constitution of Ohio."

{¶ 18} The circulators did not file a notice of appeal from the trial court's judgment; however, we allowed them to file an amicus brief, which addresses the question of subject-matter jurisdiction raised by the board.

{¶ 19} Because they have the potential to be dispositive of this cause, we will first consider the cross-assignments of error propounded by cross-appellants, Urbas and Pedro.

{¶ 20} The December 30, 2004 judgment on the question of the constitutionality of R.C. 503.09 does not indicate that it was entered in favor of the board on their request for a declaratory judgment or whether it was premised on the circulators' motion for summary judgment. In any event, determination of an alleged constitutional claim is a matter of law; therefore, we conduct a de novo review of the trial court's judgment on this issue. *Hood v. Rose*, 153 Ohio App.3d 199, 2003-Ohio-3268, 792 N.E.2d 736, ¶ 12, citing *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208.

{¶ 21} The Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and of Section 2, Article I, Ohio Constitution, are functional equivalents. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 544, 706 N.E.2d 323. Therefore, cross-appellants' first and second assignments of error will be considered together.

{¶ 22} The Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 2, Article I, Ohio Constitution, require a state to provide equal protection of the law to each person within its jurisdiction. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 288–289, 595 N.E.2d 862. Class legislation or class action is not totally precluded, however. Id. at 288, 595 N.E.2d 862. When a statute is applicable to all persons under like circumstances and operates "alike upon all persons similarly situated," it does not violate the Equal Protection Clauses. Id. at 288–289, 595 N.E.2d 862.

{¶ 23} We must first determine whether any classifications are created by R.C. 503.09. The statute reads:

{¶ 24} "Where a township contains a municipal corporation, either in whole or in part, if a majority of the freehold electors owning land in the portion of such a township outside the municipal corporation's corporate limits, petitions, with a map accurately setting forth such territory, praying to have such territory erected into a new township, and excluding the territory within the municipal corporation, the board of county commissioners shall enter an order erecting such territory into a new township, the boundaries of which need not include twenty-two square miles of territory. Upon the erection of such new township, the territory lying within the limits of the municipal corporation in the original township shall be considered as not being located in any township."

{¶ 25} A freeholder is the owner of an interest in land the duration of which is not fixed by a specified period of time. *Cunningham v. Crabbe* (1992), 73 Ohio App.3d 596, 598, 597 N.E.2d 1210. "Elector" is defined as a "duly qualified voter * * *. One who elects or has the right of choice or who has the right to vote for any functionary, or for the adoption of any measure." Black's Law Dictionary (Abridged 6th Ed.1991) 359. Therefore, under R.C. 503.09, a freehold elector is a qualified voter who owns an interest in land in the township but outside any incorporated territory. Based upon these definitions, we find that R.C. 503.09, as written, establishes two classifications within the general class of electors living in Waterville Township. These are (1) electors who live in an unincorporated portion of Waterville Township but do not own property therein and (2) electors who own real property in Waterville Township, but live within the boundaries of incorporated areas, in this case, the villages of Waterville and Whitehouse. Persons who are members of one or the other of these classifications are precluded from having any say in the creation of a new township. Accord, *Cunningham v. Crabbe* (1992), 73 Ohio App.3d 596, 599, 597 N.E.2d 1210.

{¶ 26} This court must next decide whether either or both of these classifications violate the Equal Protection Clauses of the United States and Ohio Constitutions. Our analysis of this issue rests upon the nature of the interest affected. *Conley v. Shearer*, 64 Ohio St.3d at 289, 595 N.E.2d 862. Unless state action exists that impinges on a fundamental interest or depends on a suspect classification, a rational-basis analysis is applied in a case involving the Equal Protection Clause. Id., quoting *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 11, 15 O.O.3d 3, 399 N.E.2d 66. In such a case, a statute will not be declared unconstitutional unless the party challenging the legislation demonstrates that it is unconstitutional beyond a reasonable doubt. *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 4. Under this standard, the classification does

not violate equal protection if it bears a rational relationship to a legitimate governmental interest. *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447, 613 N.E.2d 574.

{¶ 27} If, however, the classification involves a fundamental right or a suspect classification, a strict-scrutiny test must be applied.[2] *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 423, 633 N.E.2d 504. Pursuant to this test, a statutory classification will be found unconstitutional unless it can be established that the statutory classification is narrowly tailored and necessary to promote a compelling state interest. *Reno v. Flores* (1993), 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1. That is, once a fundamental right or a suspect classification is shown to be involved, the state must assume the heavy burden of proving that the legislation is constitutional. *Eisenstadt v. Baird* (1972), 405 U.S. 438, 447, 92 S.Ct. 1029, 31 L.Ed.2d 349, fn. 7; *Dunn v. Blumstein* (1972), 405 U.S. 330, 342, 92 S.Ct. 995, 31 L.Ed.2d 274.

{¶ 28} In the case under consideration, cross-appellants claim that R.C. 503.09 infringes upon their fundamental right to vote because it denies freehold electors who do not own property in Waterville Township and those who own property in an incorporated area in Waterville Township the right to sign a petition seeking the creation of a new township. In other words, cross-appellants claim that the R.C. 503.09 procedures for the erection of a new township are a substitute for their fundamental right to vote. They argue, therefore, that the circulators were required to establish that the classification was needed to promote a compelling governmental interest. For the following reason, we agree.

{¶ 29} The answer to whether the right to vote is implicated in the application of R.C. 503.09 is found by determining whether it is the freehold electors residing in Waterville Township but not in either the village of Waterville or the village of Whitehouse who actually decide the question of creating a new township. By way of comparison, R.C. Chapter 709 allows owners of real estate adjacent to a municipal corporation to petition for annexation to the municipality. R.C. 709.02. It is the board of county commissioners, however, that makes the ultimate determination on the request for annexation. See R.C. 709.033. Since neither the landowners and/or electors of the township or municipality are given the right to vote on the matter, "the application of the statute poses no equal protection issue." *Carlyn v. Akron* (C.A.6, 1984), 726 F.2d 287, 290.

---

2. A third level of scrutiny, termed intermediate scrutiny, which is employed in certain cases involving allegations of unequal treatment under a statute due to, for example, illegitimacy, see *Clark v. Jeter* (1988), 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465, is inapplicable to this cause.

{¶ 30} On the other hand, pursuant to R.C. 503.09, once a proper petition signed by 50 percent of the freehold electors living outside the incorporated portions of the township and a map of the proposed township is filed, a county board of commissioners *shall* enter an order erecting a new township. The use of the word "shall" in a statute denotes that compliance with the commands of the statute is mandatory, absent clear and unequivocal legislative intent to the contrary. *State ex rel. Botkins v. Laws* (1994), 69 Ohio St.3d 383, 385, 632 N.E.2d 897. In this cause, there is no clear and unequivocal intent to the contrary; therefore, the word "shall" imposes a mandatory duty on a board of commissioners to erect a new township once the eligible freehold electors in a township resolve, that is, vote on, the issue of whether to erect a new township. Consequently, the right to vote is implicated in the case sub judice.

{¶ 31} In *Bush v. Gore* (2000), 531 U.S. 98, 104–105, 121 S.Ct. 525, 148 L.Ed.2d 388, the United States Supreme Court held:

{¶ 32} "[T]he right to vote as the [State] legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter. * * * The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." See also *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 18 (listing the right to vote as a fundamental right).

{¶ 33} Because this fundamental constitutional right is at issue, the constitutionality of R.C. 503.09 must be reviewed using a strict-scrutiny analysis. Thus, the statute must be narrowly tailored to serve a compelling state interest. *State v. Thompson*, at ¶ 13, citing *United States v. Playboy Ent. Group, Inc.* (2000), 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865, and *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.* (2000), 89 Ohio St.3d 564, 567, 733 N.E.2d 1152.

{¶ 34} Generally, the only restrictions that the state can impose on the right to vote are residence, age, and citizenship requirements. *Hayward v. Clay* (C.A.4, 1978), 573 F.2d 187, 189. There are a number of cases in which, employing either strict scrutiny or a rational-basis standard, the United States Supreme Court struck down, on equal protection grounds, statutes that treated one class of candidates or voters differently from another class. See, e.g., *Quinn v. Millsap* (1989), 491 U.S. 95, 109 S.Ct. 2324, 105 L.Ed.2d 74 (finding that a state-law requirement that only those who owned real property could be appointed to a board that had the duty to develop plans to reorganize local government was not rationally related to any government interest); *Hill v. Stone* (1975), 421 U.S. 289, 297–298, 95 S.Ct. 1637, 44 L.Ed.2d 172 (state statute requiring that

voting on city bond issue be restricted to residents who have taxable personal property is unconstitutional); *Cipriano v. Houma* (1969) 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (a city election that limited voting in certain special elections to property taxpayers held unconstitutional); and *Kramer v. Union Free School District No. 15* (1969), 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (New York education law that required a person who wanted to vote in school-district elections either to own or to lease taxable property within the district or to be a parent or custodian of a child attending school within the district was held unconstitutional).

{¶ 35} In the present case, cross-appellees, the circulators, assert that under the rational-basis test, it is the freehold electors living in the unincorporated areas of Waterville Township who have the greatest interest in the erection of a new governmental unit because they are the only persons who have to pay property taxes. We will first discuss this allegation with regard to the classification of nonfreehold electors who reside in the unincorporated areas of Waterville Township, as represented by elector Urbas.

{¶ 36} We conclude that the justification offered by the circulators is insufficient either under the strict-scrutiny or rational-basis standards. In *Quinn v. Millsap* (1989), 491 U.S. at 109, 109 S.Ct. 2324, 105 L.Ed.2d 74, the United States Supreme Court, applying the rational-basis level of scrutiny,[3] rejected this argument. Citing *Turner v. Fouche* (1970), 396 U.S. 346, 363–364, 90 S.Ct. 532, 24 L.Ed.2d 567, the court stated that the "ability to understand the issues concerning a community does not depend on ownership of real property." The *Millsap* court also observed that nonfreehold residents can be just as attached to their community as freehold residents. Id., citing *Turner*, 396 U.S. at 364, 90 S.Ct. 532, 24 L.Ed.2d 567. Furthermore, nonfreehold electors residing in Waterville Township have just as much of an interest in the governing of the new township and the services that it may or may not provide. Finally, even though property taxes are initially paid by property owners in Waterville Township, at least a portion of the burden of a year's tax on rental property is likely to be borne by a tenant, not the landlord, "who will treat the property tax as a business expense and normally will be able to pass all or a large part of this cost on to the tenants in the form of higher rent." *Phoenix, Ariz. v. Kolodziejski* (1970), 399 U.S. 204, 210, 90 S.Ct. 1990, 26 L.Ed.2d 523.

---

**3.** "[I]t is a form of invidious discrimination to require land ownership of all appointees to a body authorized to propose reorganization of local government. We need apply no more than the rationality review * * *." *Millsap*, 491 U.S. at 106–107, 109 S.Ct. 2324, 105 L.Ed.2d 74. The court therefore declined to apply the strict-scrutiny standard. Id. at 107, 109 S.Ct. 2324, 105 L.Ed.2d 74, fn. 10.

{¶ 37} Accordingly, we find that the basis advanced by cross-appellees is not compelling, or even rational, and therefore does not support the disparate treatment of a class of nonfreehold electors who live in the unincorporated section of Waterville Township. Therefore, that portion of R.C. 503.09 relating to this classification violates the Equal Protection Clauses of the United States Constitution and is unconstitutional.

{¶ 38} With regard to the class of electors, be they freeholders or nonfreeholders, who reside within the incorporated areas of Waterville Township, as embodied in elector Pedro, we do not come to the same conclusion. Specifically, a compelling justification exists for excluding the vote of those electors who reside in incorporated areas of the township. Clearly, in enacting R.C. 503.09, the legislature intended to prevent a situation in which freehold or nonfreehold electors residing within the bounds of an incorporated area could govern township business that does not affect those electors and whose interest may be opposed to freehold and nonfreehold electors who reside outside the incorporated area. Accord, *Citizens for Choice v. Summit Cty. Council* (2001), 143 Ohio App.3d 823, 828, 759 N.E.2d 398 ("The statute [R.C. 503.09] is designed to permit the non-municipal freeholders to achieve a level of self-government that they do not have as a minority in a township dominated by a municipality. That the residents of the village will no longer be able to be a dominant force in the government of a township, which is a unit of local government completely separate from the village, disturbs no legal rights previously enjoyed by the village as an entity. The village does not have a legal interest in the outcome of this case"). We therefore hold that under R.C. 503.09, the disparate treatment of electors, whether they be freeholders or nonfreeholders, living within the confines of an incorporated area of a township is not an arbitrary imposition on those electors' right to vote and, consequently, does not violate the Equal Protection Clauses to either the United States or Ohio Constitutions. Cross-appellants' first and second assignments of error are well taken in part and not well taken in part.

{¶ 39} In their third assignment of error, cross-appellants complain that R.C. 503.09 is unconstitutional because it violates the Self–Governance Clause found in Section 2, Article I, Ohio Constitution. This clause provides:

{¶ 40} "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

{¶ 41} Cross-appellants contend that R.C. 503.09 is unconstitutional because it precludes nonfreehold electors who live in an unincorporated portion of

a township and freehold electors who live within the boundaries of an incorporated portion of a township from choosing their form of government. We must again agree with cross-appellants as to nonfreehold electors who live in unincorporated areas of a township. A township is a political entity that is considered a "government" within the meaning of Section 2, Article I, Ohio Constitution. *Hamilton v. Fairfield Twp.* (1996), 112 Ohio App.3d 255, 264, 678 N.E.2d 599. In signing an R.C. 503.09 petition, freehold electors who reside in the unincorporated sections of Waterville Township are opting to alter, i.e., reshape, their government. The result is the erection of a new township independent and separate from any municipality or incorporated village.[4] Thus, denying nonfreehold electors who live in the unincorporated sections of Waterville Township the right to decide whether to erect a new township violates Section 2, Article I, Ohio Constitution.

{¶ 42} We do not, however, find that preventing electors, freeholders or otherwise, who reside in the incorporated villages of Whitehouse and Waterville from petitioning for the creation of a new township under R.C. 503.09 infringes upon any constitutional right set forth in Section 2, Article I, Ohio Constitution. Simply put, those electors have chosen an incorporated village, pursuant to R.C. 707.01 et seq. as their form of government. As a result, R.C. 503.09 does not violate the Self–Governance Clause of the Ohio Constitution by excluding electors living in the incorporated areas of Waterville Township from signing a petition to erect a new township. Cross-appellants' third assignment of error is well taken in part and not well taken in part.

{¶ 43} In the event that this court determined that permitting only freehold electors residing outside of the incorporated parts of a township rendered R.C. 503.09 unconstitutional, cross-appellees, the circulators, ask this court to sever the unconstitutional term, freehold, so that the statute may be given effect.

{¶ 44} R.C. 1.50 allows the severance of invalid provisions of the Ohio Revised Code or their application to any person or circumstance if the invalidity does not affect other provisions of that section or related sections. To this end, the Ohio Supreme Court devised a tripartite test to be used in ascertaining whether severance is appropriate. See *Geiger v. Geiger* (1927), 117 Ohio St. 451, 465–466, 160 N.E. 28. This test consists of the following three questions: " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken

---

4. The new township has, for example, (1) appointed trustees and officers until the next election, R.C. 503.12; (2) separate debt, R.C. 503.10; and (3) new boundaries, R.C. 503.13.

out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?'" Id., quoting *State v. Bickford* (1914), 28 N.D. 36, 147 N.W. 407. See, also, *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 126; *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 94–95.

{¶ 45} After severing the unconstitutional provisions of R.C. 503.09, that is, the word "freehold" and the phrase "owning land," the statute reads:

{¶ 46} "Where a township contains a municipal corporation, either in whole or in part, if a majority of the electors in the portion of such a township outside the municipal corporation's corporate limits, petitions, with a map accurately setting forth such territory, praying to have such territory erected into a new township, and excluding the territory within the municipal corporation, the board of county commissioners shall enter an order erecting such territory into a new township, the boundaries of which need not include twenty-two square miles of territory. Upon the erection of such new township, the territory lying within the limits of the municipal corporation in the original township shall be considered as not being located in any township."

{¶ 47} It appears that after the severance of the unconstitutional language of the statute, the remaining portions may be read and stand by themselves. That is, absent the language limiting the right to petition ("vote") to freehold electors owning land in that portion of a township outside of an incorporated area, R.C. 503.09, as well as the other provisions governing the completion of the erection of a new township, see R.C. 503.10 through 503.13, is effective and can operate separately and independently. Further, although it may seem that the General Assembly may have intended that only electors owning township land outside the boundaries of an incorporated portion of that township may vote, the remaining language in R.C. 503.09 reflects the actual paramount purpose and intent of the statute, which is to allow only those electors residing in the unincorporated parts of the township to determine the form of their government without the influence of any incorporated villages or municipalities lying within that township. Finally, after the terms making R.C. 503.09 unconstitutional are deleted, the statute stands on its own without the insertion or inclusion of any words that were not already present. Accordingly, the *Geiger* test is satisfied, the unconstitutional terms "freehold" and "owning land" are severed from the rest of the statute, and the remainder of the statute remains in effect.

{¶ 48} Because we find certain parts of R.C. 503.09 unconstitutional, any decision made by the common pleas court based upon this statute is void and must be vacated. It follows that the assignments of error raised by the Lucas

County Board of Commissioners are thereby rendered moot and will not be considered by this court.

{¶ 49} The judgment of the Lucas County Court of Common Pleas is reversed, and this cause is remanded to that court for the sole purpose of vacating both its decision declaring that R.C. 503.09 is constitutional and its judgment that those persons seeking the erection of a new township failed to comply with the requirements of R.C. 503.09. . Appellant, the Lucas County Board of Commissioners, and cross-appellees, the circulators, are each ordered to pay one-half of the costs of these appeals pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment reversed.

PIETRYKOWSKI, P.J., and GLASSER, J., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.