*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0401p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MIDWEST MEDIA PROPERTY, L.L.C.; CTI
PROPERTIES, L.L.C.; and SPECKERT, L.L.C.,
                                  *Plaintiffs-Appellants,*

      *v.*

SYMMES TOWNSHIP, OHIO,

                                  *Defendant-Appellee.*

No. 06-3828

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00604—Sandra S. Beckwith, Chief District Judge.

Argued: July 19, 2007

Decided and Filed: October 1, 2007

Before: CLAY and SUTTON, Circuit Judges; GREER, District Judge.[*]

---

### COUNSEL

**ARGUED:** E. Adam Webb, THE WEBB LAW GROUP, Atlanta, Georgia, for Appellants. Kevin Lantz, SURDYK DOWD & TURNER, Dayton, Ohio, for Appellee. **ON BRIEF:** E. Adam Webb, THE WEBB LAW GROUP, Atlanta, Georgia, for Appellants. Kevin Lantz, Robert J. Surdyk, SURDYK DOWD & TURNER, Dayton, Ohio, for Appellee.

SUTTON, J., delivered the opinion of the court, in which GREER, D. J., joined. CLAY, J. (pp. 9-23), delivered a separate dissenting opinion.

---

### OPINION

---

SUTTON, Circuit Judge. The district court granted summary judgment to Symmes Township on plaintiffs' claims that the township's sign regulations violated the First (and Fourteenth) Amendment because plaintiffs lack standing to challenge them. We affirm.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

I.

Midwest Media, a company that erects and operates advertising signs, applied nine times for zoning permits to allow it to display billboards in Symmes Township, located in the greater Cincinnati metropolitan area, on behalf of its clients. Midwest Media filed one of the nine applications on behalf of CTI Properties and another on behalf of Speckert.

To post a sign in Symmes Township, the applicant must comply with the township's sign regulations. At the time Midwest Media filed these applications, the regulations prohibited "off-premise advertising sign[s] carrying a commercial message." Symmes Twp., Hamilton County, Ohio, Zoning Resolution art. XXXI, § 314.14; *see id.* § 312.40 (defining "[o]ff-premise [a]dvertising sign" as "[a] sign which directs attention to a business, commodity, or commercial or non-commercial service or entertainment which is not conducted, sold or offered upon the premises where such sign is located or affixed"); *id.* § 323.1(2) (prohibiting "[o]ff premise advertising"). They also imposed several height and size restrictions. *See, e.g.*, *id.* § 321.2-1(3) ("No freestanding pole sign located three hundred . . . feet from the right of way . . . shall exceed forty-five . . . feet in height . . . and no sign within six hundred fifty . . . feet from the right of way . . . shall exceed twenty . . . feet in height . . . ."); *id* § 321.2-2(4) ("No freestanding pole sign shall contain more than one hundred twenty (120) square feet of sign area per side (maximum 2 sides).").

According to the township, the regulations are designed to "minimize the possibility that sign size, location, or character will create hazards adversely affecting the public safety," *id.* § 311.4, to "provide sign regulations which are directly related to land use and therefore to the functional and economic need for signs of varying sizes, types and locations," *id.* § 311.8, to "create a more aesthetic environment," *id.* § 311.10, and to "provide for the size, lighting and spacing of off-premise advertising signs according to customary use and to provide special rules for retail areas which are surrounded by Residence Districts," *id.* § 311.12.

Midwest Media first sought permission to post a 40-foot-high, 672-square-foot, double-sided sign. The zoning inspector for the Hamilton County Rural Zoning Commission, which contracts with Symmes Township to oversee zoning matters, denied the application, noting that the proposed sign violated the township's height limit, *see id.* § 322.1-3, and its prohibition on off-premises advertising, *see id.* § 323.1(2).

Midwest Media's second application sought to display a 672-square-foot, single-face sign that stood 40 feet high. The zoning inspector denied the application, reasoning that "Commercial billboard[s] are not permitted in Symmes twp," JA 77, the application exceeded the township's height and square-footage limits, *see* Zoning Resolution art. XXXI, § 321.2-2(3)–(4), and it violated the prohibition on off-premises advertising, *see id.* § 323.1(2).

The third application sought permission to display a 672-square-foot, single-face sign standing 40 feet high, and the zoning inspector denied the certificate for the same reasons as he did the second one.

The fourth application sought permission to post a double-sided, 672-square-foot sign standing 40 feet high. Once again, the zoning inspector denied the certificate because it violated the township's height and square-footage limits and its ban on off-premises advertising.

The fifth application sought permission to display another double-sided, 672-square-foot sign measuring 40 feet high. In denying the certificate, the inspector cited sections of the township regulations setting size and height limits and prohibiting off-premises advertising. *See id.* §§ 321.2-2(3)–(4), 323.1(2).

The sixth, seventh and eighth applications requested permission to erect a "monopole," double-sided, 672-square foot billboard measuring 40 feet high. The zoning-plans examiner denied the certificates, citing the regulation prohibiting off-premises advertising signs, *see id.* § 323.1(2), and noted later (in an affidavit) that she could have denied the requests on the basis of size and height limits.

The ninth application sought to display a 40-foot-tall, three-sided sign measuring 672 square feet on two of the sides and 288 on the third. The township rejected the application, citing the ban on off-premises advertising, *see id.*, and Midwest Media's failure to seek a variance, and noting later (in an affidavit from the zoning-plans examiner) that the proposed sign violated the township's size and height requirements.

After the denial of the ninth application, Midwest Media, CTI Properties and Speckert filed this lawsuit against Symmes Township, challenging the validity of the off-premises advertising ban, though not the size and height restrictions, and the validity of the permitting process because it lacked "procedural safeguards." Compl. ¶¶ 49–50, 54. The plaintiffs sought an injunction, damages and attorney fees.

Soon after plaintiffs filed this lawsuit, Symmes Township amended the regulations to clarify some of them, to remove others and to leave still others intact. Of particular interest to this lawsuit, the township left in place its size and height requirements. *See* Zoning Resolution art. XXXI, § 313.3-5.

Symmes Township filed a motion for summary judgment, which the district court initially denied because "the parties had given inadequate attention" to (1) whether the court could "require the Township to permit the erection of signs in clear violation" of the size and height requirements, which appeared to be "constitutionally permissible regulations," simply "because [zoning] official[s] failed to cite those regulations in denying" some of the applications, D. Ct. Order at 7, (2) whether the size and height provisions were "severable and enforceable even if other provisions [were] not," *id.*, and (3) whether the plaintiffs were "entitled to damages even though their applications would have been subject to denial even in the complete absence of the contested portions of the Sign Rules," *id.* at 7–8. After additional briefing on these points, the court granted the township's supplemental motion for summary judgment on the ground that plaintiffs lack standing to bring their claims.

II.

This appeal raises two "case[]" or "controvers[y]" issues under Article III: Is the dispute moot in view of the township's passage of the amendment to the sign-ordinance law? And, even if the case is not moot, do plaintiffs have standing to bring this challenge?

A.

While standing restricts a party's capacity to bring a lawsuit at the time the complaint is filed, mootness restricts a party's capacity to bring a lawsuit throughout the course of the litigation. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396–97 (1980). Mootness occurs "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Even when an action presents a live case or controversy at the time of filing, subsequent developments—including the passage of a new law or an amendment to the original law—may moot the case. *Hall v. Beals*, 396 U.S. 45, 48 (1969).

In most cases, the repeal or amendment of a law moots challenges to the original law. But, in this case, plaintiffs sought money damages arising from the township's failure to approve their

nine sign applications. The existence of this damages claim preserves the plaintiffs' backward-looking right to challenge the original law and to preserve a live case or controversy over that dispute. *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005).

B.

To meet the "irreducible minimum" requirements of constitutional standing, plaintiffs must demonstrate (1) that they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted), (2) that a causal link exists "between the injury and the conduct complained of," *id.*—i.e., that the "injury . . . fairly can be traced to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976), and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Each requirement is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.*

The key problem with plaintiffs' claim is one of redressability. Even if plaintiffs could show that the township's original off-premises advertising ban (or its sign-approval process) violated the First Amendment, each of Midwest Media's nine sign applications sought permission to post signs that plainly violated the township's size and height regulations. *See* JA 92 (denying application and noting that sign exceeded height limit); JA 77 (denying application and citing general provision containing size and height limits); JA 88 (same); JA 110 (same); JA 157 (affidavit from zoning inspector stating that application "could have been denied" because the proposed sign "exceeded the height limitation" and "exceeded the maximum square footage" permissible); JA 160 (affidavit from zoning-plans examiner stating that three applications "could have been denied because" they "exceeded height limitations" and "exceeded the maximum square footage" permissible); JA 163 (affidavit from zoning-plans examiner stating that application "could have been denied because . . . it exceeded height limitations" and "exceeded the maximum square footage" permissible). Yet plaintiffs chose not to challenge the size and height requirements in their complaint—perhaps in view of the difficulty of such a challenge here. *See Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818–21 (6th Cir. 2005) (rejecting challenge to sign ordinance's size and height requirements); *see also Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 807 (1984) (rejecting challenge to city's ban on posting signs on public property).

Having chosen not to challenge the size and height regulations and having filed nine applications to post a sign in the township that violated these regulations, plaintiffs cannot tenably show that success in challenging *other* regulations of the sign ordinance will redress any injury caused by these regulations. For even in the absence of these regulations—even if, consistent with the relief sought in plaintiffs' complaint, our court invalidated them—that would not redress plaintiffs' injury because the size and height restrictions still would preclude the township from approving their sign applications and thus still would preclude plaintiffs from erecting each of these signs.

In reaching this conclusion, we follow a path marked by several decisions from other circuits, most of which not only presented the same redressability problem but also arose from disputes over sign ordinances—and indeed disputes over sign ordinances litigated by the same law firm. In *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006), the Eighth Circuit identified a similar standing flaw. "[A] favorable decision for Advantage," the court reasoned, "even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback."

*Id.* at 801; *see id.* at 802 ("[F]or even in victory [plaintiff] would be 'no closer' to erecting its billboards or obtaining damages than when litigation began."). To the same effect is *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299 (11th Cir. 2007). Plaintiff "has not satisfied the redressability requirement," the court held: "Any injury [plaintiff] actually suffered from the billboard and offsite sign prohibition is not redressible because the applications failed to meet the requirements of other statutes and regulations not challenged." *Id.* at 1303.

The Fourth Circuit reached a similar conclusion in a similar setting: "Because Covenant's application violated the spacing requirement, it could not have been approved regardless of whether other substantive provisions of the Sign Regulation are held to be unconstitutional." *Covenant Media of S.C., L.L.C. v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007); *see id.* (Plaintiff "does not have standing to challenge other substantive provisions of the Sign Regulation that could have served as the basis for denying the December 2004 Application."); *Harp Adver. Ill., Inc. v. Vill. of Chi. Ridge*, 9 F.3d 1290, 1291 (7th Cir. 1993) (denying standing to company that challenged city's zoning and sign codes, but not its size provision, because the company "could not put up its sign even if it achieved total victory in [the] litigation" given that its proposed sign was "six times as large as Chicago Ridge allows"); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1009 (9th Cir. 2001) (reasoning that because plaintiff did not challenge "an additional barrier" to his adult-entertainment license application, "the district court could not redress his alleged injury in this lawsuit"); *Deeper Life Christian Fellowship v. Sobol*, 948 F.2d 79, 83–84 (2d Cir. 1991) (holding that church lacked standing to challenge permit procedure as granting "unbridled discretion" to officials because the statute prohibited all religious organizations from receiving permits; thus "even if [the church] were to change its tenets [to comply with the permit requirements] the statute would still not allow appellant a permit so long as it remained a religious organization"); *cf. Renne v. Gerry*, 501 U.S. 312, 319 (1991) (finding a dispute nonjusticiable where another unchallenged statute "might be construed" to prohibit the same conduct as the challenged statute); 13 Charles Alan Wright, et al., Federal Practice and Procedure § 3531.5.

We need not decide whether plaintiffs could resolve this standing defect by alleging that they wish to post signs that would satisfy the township's size and height restrictions. Nothing in their complaint offers any indication that they have any such plans—and if the nine past applications (none of which satisfied the size and height restrictions) are precedent, there is no reason to think that they will file any such application in the future. There thus is no basis for alleging imminent injury from the regulations, as they offer no basis for concluding that they will seek permission to post a sign that would comply with the unchallenged portions of the ordinance.

Plaintiffs' invocation of the overbreadth doctrine does not solve this problem. Yes, the doctrine relaxes the traditional requirement "that a party may assert only a violation of its own rights." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) ("Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."). But, earlier this year, our court reminded litigants that overbreadth does not excuse a party's failure to "allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007); *see id.* at 350 ("Because overbreadth creates an exception only to the *prudential* standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment.") (emphasis added); *see also Am. Booksellers*, 484 U.S. at 392 ("To bring a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact . . . ."); *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984) (noting that a "crucial issue[]" for overbreadth standing is whether the plaintiff "satisfies the requirement of 'injury-in-fact'").

The similarities between this case and *Prime Media*, 485 F.3d 343, deserve emphasis. Prime Media wanted to display signs that violated the city's billboard ordinance, including its prohibition on off-premises advertising and its size and height restrictions. *Id.* at 346. After holding that the size and height limitations constituted valid time, place and manner restrictions, *see Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 821 (6th Cir. 2005), we remanded the case to the district court to decide whether Prime Media had standing to challenge the entire billboard ordinance, *id.* at 825. The district court concluded that it did not and dismissed the lawsuit, *Prime Media, Inc. v. City of Brentwood*, No. 3:02-1034, 2005 WL 3754055, at *3 (M.D. Tenn. July 29, 2005), and we affirmed, holding that Prime Media lacked constitutional standing to mount an overbreadth attack on the ordinance, *see Prime Media*, 485 F.3d at 353–54. Because the size and height restrictions were valid time, place and manner restrictions and because Prime Media's signs violated these provisions, the company necessarily did not suffer a redressable injury. *See id.* at 352 ("If it had attempted to produce a billboard which complied with the height and size requirements, and was threatened with rejection or regulation under the other challenged ordinance provisions, there would arguably be a cognizable injury in fact. Even if it had articulated some plans that it had developed to erect such a sign, but was discouraged from doing so because it was destined to lose based on one of the ordinance's substantive provisions . . . Prime Media might have a claim of an imminent, threatened injury. However the record bears no evidence of such a development. As a result, Prime Media has not been subject to or affected by the other ordinance provisions challenged in its remaining claims.").

As it was in *Prime Media*, so it is here: All of the signs plaintiffs sought to erect violated Symmes Township's size and height requirements, and they have not provided us with any facts showing that they intend to display signs that comply with these provisions. Having suffered no cognizable injury, they lack standing to mount an attack on the township's sign regulations—whether under the overbreadth doctrine or under any other doctrine. *See Advantage Media*, 456 F.3d at 799 ("Under no circumstances . . . does the overbreadth doctrine relieve a plaintiff of its burden to show constitutional standing."); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006) ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.") (internal quotation marks omitted); *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 554 (9th Cir. 2003) (noting that overbreadth standing requires "injury-in-fact"); *Harp Adver.*, 9 F.3d at 1292 ("[The overbreadth doctrine] does not imply, however, that the requirement of standing to sue has been elided."). Plaintiffs do no better by contending that they have brought a facial challenge. *See Covenant Media*, 493 F.3d at 429–30 ("Although there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions.") (internal citations and quotation marks omitted).

Plaintiffs next argue that, even if the size and height restrictions are constitutional and even if they would defeat their claims, they cannot be severed from the rest of the statute, including the allegedly unconstitutional parts of it. As a result, they say, they should be permitted to pursue their claims against other parts of the law. "Severability of a local ordinance is a question of state law . . . ." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Ohio has established a three-part inquiry to determine whether severability is appropriate: "(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?" *State v. Hochhausler*, 668 N.E.2d 457, 466–67 (Ohio Ct. App. 1996) (internal quotation marks omitted).

The valid size and height restrictions on the one hand and the purportedly unconstitutional off-premises ban and procedural provisions on the other satisfy Ohio's severability requirements. All of the provisions comfortably stand on their own; even without the challenged provisions, the height and size restrictions further several goals of the sign regulations—most especially the goal of "public safety" and "aesthetic[s]." Zoning Resolution art. XXXI, §§ 311.4, 311.10. And no words or terms need be added to separate the challenged portions from those not challenged or to give meaning to the size and height provisions. *See, e.g.*, *Norwood v. Horney*, 853 N.E.2d 1115, 1150–51 (Ohio 2006); *State ex. rel. Maurer v. Sheward*, 644 N.E.2d 369, 377–78 (Ohio 1994); *Bd. of Lucas County Comm'rs v. Waterville Twp. Bd. of Trs.*, 870 N.E.2d 791, 801–03 (Ohio Ct. App. 2007). Because the size and height requirements are severable from the allegedly unconstitutional provisions and because they prohibited plaintiffs from obtaining relief on their damages and injunction claims, the district court properly relied on those provisions in concluding that plaintiffs lacked standing to bring this lawsuit.

Several of our sister circuits have reached a like conclusion in like circumstances. *See Covenant Media*, 493 F.3d at 430 (severing height and size restriction in holding that "[b]ecause Covenant's application violated the spacing requirement, it could not have been approved regardless of whether other substantive provisions of the Sign Regulation are held to be unconstitutional. Covenant, therefore, could not have suffered any substantive constitutional injury due to other provisions of the Sign Regulation that may have been unconstitutional."); *Advantage Media*, 456 F.3d at 801 ("The district court properly considered the provisions of the sign code to be severable in making its overbreadth standing determination."); *Tanner Adver. Group, L.L.C. v. Fayette County*, 451 F.3d 777, 797 (11th Cir. 2006) (en banc) ("[T]he *Tanner* panel opinion's conclusion that the overbreadth doctrine allows a litigant who was only injured under § A-1 of a statute also to challenge § A-2 or even all of § A of a statute is incorrect . . . .").

Plaintiffs, lastly, contend that the district court "ignore[d]" the claims of Speckert and CTI Properties or erroneously "lump[ed] them in with" Midwest Media's claims. Br. at 22. But they give us no reason to treat the claims of the various companies as distinct. The only Speckert-specific evidence that the plaintiffs provide is an affidavit from the company's managing member, Robert Speckert, who never mentions the size and height regulations, let alone questions their constitutionality. And the plaintiffs offer nothing—save the application that Midwest Media filed on CTI Properties' behalf—setting forth a unique claim for CTI Properties. Neither Speckert nor CTI Properties has alleged, for instance, that it plans to apply for signs that would comply with Symmes Township's size and height limits. As with Midwest Media's claims, theirs too fail for want of standing.

In brief response to the extensive analysis offered by our dissenting colleague, we make the following observations. The Fourth, Seventh, Eighth, Ninth and Eleventh Circuits have rejected virtually identical claims—most of them arising from the same types of sign ordinances, concerning the same types of challenges and relying on the same standing problem. The dissent's concern that "the district court analyzed the constitutionality of the sign regulations and used the resolution of that issue to deny standing," Dissent at 13, is not presented by this case. Instead, the district court simply did what these other circuits have done: It reasoned that a plaintiff who attacks, say, four out of five substantive provisions of a sign ordinance does not raise a redressible injury because "[a]n injunction against the portions of the sign and zoning codes that it has challenged would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid, ordinance already on the books." *Harp Adver.*, 9 F.3d at 1292. The concern that plaintiffs *did* challenge the size and height restrictions because the complaint mentioned article XXXI of the township's code does not change matters. The substantive counts of the complaint did not mention the size and height restrictions, and the counts of the complaint—as well as the pleadings and other submissions before the district court and this court—make it clear that, while plaintiffs challenged several other provisions, they did not challenge the size and height restrictions.

III.

For these reasons, we affirm.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.  The majority argues that Plaintiffs Midwest Media Property, L.L.C. ("Midwest"), CTI Properties, L.L.C. ("CTI"), and Speckert, L.L.C. ("Speckert"), lack standing to bring this action, under 42 U.S.C. § 1983, against Defendant Symmes Township ("Defendant" or "Township"), a municipality in Ohio.  This result rests on the erroneous conclusion that Plaintiffs "chose[ ] not to challenge the size and height regulations" imposed by Defendant.  Maj. Op. at 4.  Because Plaintiffs' complaint expressly challenges Township's sign regulations in their entirety, this court has jurisdiction to reach the merits of this case.  I would reverse the district court's decision and remand this case to the district court for further proceedings.

**BACKGROUND**

Plaintiffs allege that the Township violated their First and Fourteenth Amendment rights by enforcing unconstitutional restrictions on signs.  Between July 30, 2004, and August 30, 2004, Midwest filed nine applications for commercial advertisement signs on behalf of CTI, Speckert, and other property owners in the Township.  The sign applications were denied because off-premises advertising signs carrying commercial messages are expressly banned under the Township's sign regulations.  The Township does not allow any exceptions from this prohibition.  The plain terms of the sign regulations clearly distinguish different types of speech – including political, commercial, and noncommercial speech – and set forth different restrictions and distinct regulations based on the type of speech that is being communicated and the message being disseminated.  In this case, Plaintiffs challenged the constitutionality of the sign regulations; specifically, Plaintiffs contend that the sign regulations contain impermissible content-based restrictions on speech.  The district court dismissed this case, finding that Plaintiffs lack standing, and granted summary judgment in favor of the Township.

### The Township Sign Regulations

In this case, the principal issue concerns the sign regulations enacted by the Township.  The Township justifies its restrictive measures on the grounds of "public safety and welfare, advancement of aesthetic characteristics, business promotion and property value preservation." (Def. Br. at 6)  The contested sign regulations provide numerous restrictions on the size and type of signs which may appear in various locations throughout the Township.  In pertinent part, the sign regulations prohibit commercial advertising off the premises of the business being advertised.  They require all signs to be set back ten feet from pavement and rights-of-way, and five feet from adjoining property, and they provide disparate standards for different categories of signs, such as signs identifying non-profit organizations, construction signs, real estate signs, traffic control signs and political signs.

With respect to "Commercial signage," the regulations provide additional instruction.  The regulations permit only one "free standing pole sign" per parcel of land located within 650 feet of a federal interstate highway.  The signs must be at least ten feet from any right of way, and twenty feet from adjacent property.  Finally, the regulations provide limits of the height and size of commercial signs:

> 3.       No freestanding pole sign located three hundred (300) feet
> from the right of way of a federal interstate highway shall exceed
> forty-five (45) feet in height from the finished grade level and no sign

within six hundred fifty (650) feet from the right of way of a federal interstate highway shall exceed twenty (20) feet in height from the finished grade level.

4.          No freestanding pole sign shall contain more than one hundred twenty (120) square feet of sign area per side (maximum 2 sides).

(J.A. 132)

Defendant amended the sign regulations on May 5, 2005.[1]  In the amended regulations, Defendant stated that it was committed to the "public's right to receive and display" messages protected by the First Amendment "subject, however, to reasonable regulations to assure safety and minimize visual blight." (J.A. 142)  The amended regulations eliminated certain restrictions on political signs and clarified that off-premises advertising excluded noncommercial signs. Defendant now permits the display of political signs and "First Amendment Protected Messages" without a zoning certificate, subject to area, height, and setback requirements. (J.A. 143-44)

Defendant also created a "special appeals process." (Def. Br. at 16)  Under the amended regulations, Defendant is charged with making a determination with respect to a zoning application within fifteen days.  Defendant's decision may be appealed to the Board of Zoning Appeals (the "Board") within twenty days.  The Board is required to set a hearing within twenty to forty days, and must provide written notice to all interested parties.  The Board must make a final decision within fourteen days after the hearing.  If the Board fails to meet the procedural requirements set forth in the regulations, the zoning application is deemed granted.

Notably, the amended regulations did not change restrictions concerning freestanding signs and poles.  Under the amended regulations, "[w]hether a sign displays a commercial message or a Free Speech message, each sign shall still be subject to the dimensional regulations imposed in each zoning district including, but not limited to size, height, area and setback in the same manner as if it were displaying a commercial message." (J.A. 144)  The amended regulations also retain an express ban on all off-premises commercial advertisements.

"Midwest is . . . in the business of erecting and operating advertising signs that are utilized by businesses, churches, organizations, and individuals . . . to communicate commercial and noncommercial messages." (J.A. 8) CTI and Speckert are companies that "operate[ ] a business and own[ ] property interests in land within" the Township.  Both companies "seek[ ] to display and view noncommercial and commercial messages on signs within the Township," and "seek[ ] the freedom to post [their] own or others' signs on [their] property located in the Township." (J.A. 9) They have "signed lease agreements authorizing Midwest to operate signs," but have "refrained from posting signs in the Township due to the chilling effect of the Sign Regulations." (Plaintiffs' Br. at 4)

Midwest submitted nine sign applications, including applications on behalf of CTI and Speckert, to the Township.  Each of these applications sought a forty-foot tall "freestanding pole sign on commercial property," with 672 square feet of sign space per side.  Each of these applications were rejected by the Township either for failing to comply with the prohibition on "off premises signage," for proposing a billboard "not next to interstate highway," for failing to comply with limits on the number of signs which could be constructed on a particular parcel, or for

---

[1]Plaintiffs did not amend the complaint after Defendant amended the sign regulations.

exceeding height and area restrictions.  Additionally, the Township now argues that, in denying each application, it  initially gave only a few of several valid justifications for denial under the sign regulations.  Specifically, the Township argues that each proposed sign violates the restrictions on height and area and that they violate the rule against off-premises advertising.

### Procedural History

After the denial of the nine applications, Plaintiffs filed a complaint against the Township on September 3, 2004, alleging that the sign regulations are unconstitutional.  Plaintiffs contend that the sign restrictions are content-based because the regulations define and prohibit signs solely by the content or message to be displayed and impermissibly favor commercial over noncommercial speech.  Additionally, they allege that the regulations lack procedural safeguards and grant unfettered discretion to the Board.  Finally, Plaintiffs maintain that Defendant's regulations unduly burden fundamental methods of communication and violate equal protection.

Significantly, Plaintiffs' complaint alleges that the entirety of Township's sign regulations–including the height and area restrictions–are unconstitutional:

> As used herein, "Sign Regulations" refers specifically to Article XXXI of the Symmes Township Zoning Resolution and, collectively to those sections of the Resolution that define [sic] otherwise regulate signs . . . . [2]

(J.A. 13)

On June 13, 2005, Defendant filed a motion for summary judgment, which the district court denied because the parties failed to adequately brief certain issues.  In pertinent part, the district court stated:

> The Court perceives a number of issues to which the parties have given inadequate attention . . . . [t]he first such issue is the effect of the fact that the proposed signs were in clear violation of provisions of the Sign Rules not cited by the Zoning Inspector in denying or refusing Plaintiffs' applications but also not challenged on constitutional grounds by Plaintiffs. Can the Court require the Township to permit the erection of signs in clear violation of apparently constitutionally permissible regulations because its official failed to cite those regulations in denying an application? Are the constitutionally permissible provisions severable and enforceable even if other provisions are not? Are Plaintiffs entitled to damages even though their applications would have been subject to denial even in the complete absence of the contested portions of the Sign Rules? Resolution of those issues in favor of Defendant may eliminate the necessity of the Court's resolving certain constitutional issues in this case.

---

[2] Each of the thirteen counts in the complaint alleging that the Township ordinances are constitutionally deficient use the words "Sign Regulations" to describe the specific regulations being challenged. *See e.g.*, (J.A. 17) ("THE SIGN REGULATIONS UNCONSTITUTIONALLY FAVOR COMMERCIAL OVER NONCOMMERCIAL SPEECH"). The height and area restrictions are contained in Article XXXI of the sign regulations.  (J.A. 132)

*Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, No. 04-CV-604, 2006 WL 143476, at *3 (S.D. Ohio Jan. 18, 2006) (unpublished case).

After further briefing, the district court granted summary judgment in favor of Defendant on May 22, 2006, finding that

> the Township denied or refused each of Plaintiffs' applications because it contemplated a sign both taller and larger than permitted by the Sign Regulations. Plaintiffs do not deny that each of the contemplated signs exceeded the Sign Regulations' height and size restrictions, and the evidence of record plainly demonstrates that the signs were not permitted under those provisions of the Regulations.

*Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, No. 04-CV-604, 2006 WL 2347489, at *3 (S.D. Ohio May 22, 2006) (unpublished case). Despite the express language of Plaintiffs' complaint, the district court found "that Plaintiffs do not challenge the constitutionality of the height and size restrictions *per se*" and that "[s]uch restrictions are routinely permitted to reduce visual blight and promote traffic safety." *Id.* at *4 (citations omitted). The court noted that height and size "restrictions have been invalidated in the absence of evidence that safety and aesthetics were the motivation for their adoption," but found that "the Sign Regulations in this case include explicit statements of purpose and intent identifying public safety and aesthetics." *Id.* More specifically, the district court "concluded as a matter of law that Plaintiffs cannot prove an actual or threatened injury-in-fact," and that Plaintiffs "lack standing to assert an overbreadth challenge to the Sign Regulations on behalf of third-parties." *Id.* at *6. Plaintiffs filed a timely notice of appeal on June 6, 2006.

## DISCUSSION

### I.      Standard of Review

The dismissal of a claim for lack of standing is reviewed *de novo*. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007); *see also Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004).

Moreover, this Court reviews a district court's denial of summary judgment *de novo*. *Dickerson v. McClellan*, 110 F.3d 1151, 1157 (6th Cir. 1996). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 333 (1986). If Defendants carry their burden of showing that there is an absence of evidence to support a claim, *id.* at 325, Plaintiffs must come forward with "specific facts showing that there is a genuine issue for trial," *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968).

## II.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE TOWNSHIP

### A. Standing

#### 1.    Constitutional Standing Generally

As a threshold matter, Plaintiffs argue that the district court improperly decided the merits of the constitutional claim before addressing the issue of standing. In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), the Supreme Court held that courts must decide jurisdictional questions as a threshold matter. *Id.* at 94-95. "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (internal quotation marks and citations omitted). A court should not analyze or resolve substantive issues before addressing the issue of standing. "Before turning to the merits, [a court] must address the plaintiffs' standing to raise several constitutional claims and [ ] must do so even though some of those constitutional claims are easier to resolve than the standing question attached to them." *1064 Old River Road, Inc. v. City of Cleveland*, 137 F. App'x 760, 764 (6th Cir. 2005) (citation omitted) (unpublished opinion). A district court may not avoid the standing issue and proceed to a determination on the merits because "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). In the instant case, since the district court analyzed the constitutionality of the sign regulations and used the resolution of that issue to deny standing, the court's decision is procedurally improper.

In this case, the district court erred in finding that Plaintiffs lack standing to bring this action. To make a determination with respect to standing, this Court must determine whether Plaintiffs "have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citation omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (internal quotation marks and citation omitted) "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citation omitted). Each element of standing will be discussed below.

Plaintiffs can demonstrate an injury in fact that satisfies the first element of the standing inquiry. Notably, the district court's opinion addressed only Midwest's standing claims and did not make a determination with respect to CTI's and Speckert's standing claims. Since CTI's and Speckert's claims are separate and independent from Midwest's claims, the district court erred in failing to address those claims.

The record shows that Midwest submitted sign applications to the Township specifically on behalf of CTI and Speckert. Defendant denied the applications. The denial of the applications precluded CTI and Speckert from disseminating commercial speech and messages, and may have had a chilling effect on protected speech. *See Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (recognizing that a chilling effect is a "constitutional violation[ ] [that] may arise from the deterrent, or chilling, effect of governmental [efforts] that fall short of a direct prohibition against the exercise of First Amendment rights." (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Since the Township used the sign regulations to deny the sign applications, CTI and Speckert can demonstrate a direct injury and have standing to challenge the regulations. *See,*

*e.g.*, *Epicenter of Steubenville, Inc. v. City of Steubenville*, 924 F. Supp. 845, 849-50 (S.D. Ohio 1996) (holding that the inability to obtain a municipal zoning permit constitutes injury in fact); *see also V. Jacobs & Sons v. Saginaw County Dep't of Pub. Health*, 284 F. Supp. 2d 711, 716 (E.D. Mich. 2003); *Horizon Outdoor, L.L.C. v. City of Industry*, 228 F. Supp. 2d 1113, 1125 (C.D. Cal. 2002).

Although Midwest does not have an injury as direct as the injury alleged by CTI and Speckert, the record clearly shows that Midwest lost income it would have received if the sign applications had been approved. Midwest's economic loss qualifies as an injury for standing purposes. *Cf. Int'l Ass'n of Firefighters of St. Louis v. City of Ferguson*, 283 F.3d 969, 974 (8th Cir. 2002) (noting that indirect economic injury may constitute an injury in fact); *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 998 (9th Cir. 1999) (same); *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998) (same). Since the denial of the applications directly curtailed CTI's and Speckert's speech and reduced Midwest's income, Plaintiffs have suffered a requisite injury in fact.

Plaintiffs also satisfy the second element of the standing inquiry because there is a causal connection between their alleged injuries and the Township's conduct. *See Am. Canoe Ass'n*, 389 F.3d at 542. Plaintiffs' alleged injuries are fairly traceable to the Township's sign regulations, particularly because Defendant used the sign regulations to deny the sign applications. *See Lockridge v. City of Oldsmar, Fla.*, 475 F. Supp. 2d 1240, 1249-50 (finding that the denial of a sign application was "causally connected to the allegedly unconstitutional ordinance upon which the application denials were based."). Finally, Plaintiffs satisfy the third element in the standing inquiry because it is likely that their injuries would be redressed by a favorable decision.

The majority avers that Plaintiffs lack standing to bring this action because the complaint failed to challenge the size and height restrictions set forth in the Township's sign regulations. This contention is simply wrong and demonstrates a flagrant disregard for the plain language and express allegations contained in Plaintiffs' complaint. In this case, the complaint expressly challenges "the Township's Sign Regulations" and "refers specifically to Article XXXI of the Symmes Township Zoning Resolution and, collectively to those sections of the Resolution that define [or] otherwise regulate signs, including provisions located in Articles III (Definitions), XVIII (Board of Zoning Appeals), XIX (Zoning Certificates), and XXVIII (Violations and Penalties)." (J.A. 13) The Township's size and height restrictions are found in Article XXXI, and Plaintiffs expressly challenge this article and all of its provisions in the complaint. Moreover, the complaint repeatedly alleges that all aspects of the Township's sign restrictions "are constitutionally invalid and inseparable from the remainder of the regulations," (J.A. 25), and that "no valid regulation prohibited [the] requested signs," (J.A. 23)

Contrary to the majority's assertions, Plaintiffs do not challenge a discrete piece of Article XXXI; rather, the allegations in the complaint challenge all provisions contained in the article. The majority's reading of the complaint is simply wrong because this Court is charged with applying a liberal standard of review to the complaint and with viewing the pleadings and evidence in the record in the light most favorable to the plaintiffs. *Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007) (en banc)(discussing Fed. R. Civ. P. 56); *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 709 (6th Cir. 1979) ("Under the liberal pleading allowances of the Federal Rules of Civil Procedure, allegations made in pleadings must be broadly construed."); *see also* Fed. R. Civ. P. 8. The notice pleading requirement is satisfied because Plaintiffs' allegations are sufficient to put

Defendant on notice of the injury being alleged.[3] *Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) (noting that "under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery") (citing *Conley*, 355 U.S. at 48). In the absence of a heightened pleading requirement, there is no basis for finding that the allegations of Plaintiffs' complaint fail to challenge the size and height limitations set forth in the Township's sign regulations.

## 2. Standing Under the Overbreadth Doctrine

While the reasons stated above are sufficient to hold that Plaintiffs have standing, their case is further bolstered by the overbreadth doctrine. The Supreme Court has found that broadly written statutes may have a powerful deterrent effect on free speech and expression. *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) (establishing the overbreadth doctrine). The Supreme Court has held "that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798-99 (1984). Indeed, "such a statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it." *Id.* "Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

"The First Amendment doctrine of overbreadth was designed as a 'departure from traditional rules of standing,' to enable persons who are themselves unharmed by the defect in a statute nevertheless 'to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989) (quoting *Broadrick*, 413 U.S. at 613); *see also Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995). There is "no requirement that the person

---

[3] Admittedly, the notice pleading requirement was amended slightly by the Supreme Court's recent decision in *Bell Atlantic Co. v. Twombly*, 127 S.Ct. 1955 (2007), which held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 1964-65. *Twombly* does not apply here, however, because Plaintiff has coupled its allegations with facts which suggest that Defendant has deprived it of its alleged right to post signs.

*Twombly* involved a claim under § 1 of the Sherman Antitrust Act, which requires the plaintiff to prove that the defendants engaged in a "contract, combination . . . or conspiracy, in restraint of trade or commerce." *Id.* at 1961. Rather than alleging that such collusion existed, however, the *Twombly* plaintiff merely alleged that the defendants were operating their businesses in a manner which is consistent with collusion, and then invited the courts to conclude that a conspiracy must follow from this circumstantial evidence. *Id.* at 1962-63. The Supreme Court held that, under § 1 of the Sherman Act, a "bare assertion of conspiracy" is not sufficient to state a claim. *Id.* at 1967. Instead, the *Twombly* plaintiff was also required to plead facts which "raise[] a suggestion" of actual collusion. *Id.*

In other words, *Twombly* was a case where the plaintiff invoked a statute banning collusion, but failed to actually state any facts suggesting collusion. This stands in stark contrast to the instant case. Here, Plaintiff alleges a violation of the First Amendment's Free Speech Clause, and supports its allegation with specific examples of instances where the challenged regulations denied it the ability to speak freely. Plaintiff expressly states that it has been unable to post signs "[a]s a result of the Township's *enforcement* of its Sign Regulations." (J.A. 8) (emphasis added). It cites nine specific examples where it was denied its alleged rights as a direct result of the Township's denial of Plaintiff's applications to post signs.

making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Vincent*, 466 U.S. at 798-99, n. 17 (internal quotation marks and citation omitted). "Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights." *Broadrick*, 413 U.S. at 613 (citations omitted).

Midwest argues that, as an advertising company, it may raise a facial overbreadth challenge to Defendant's sign regulations. In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), the Supreme Court held that sign companies may use overbreadth standing to challenge sign regulations. As the Supreme Court expressly stated,

> [it] ha[s] never held that one with a 'commercial interest' in speech also cannot challenge the facial validity of a statute on the grounds of its substantial infringement of the First Amendment interests of others. Were it otherwise, newspapers, radio stations, movie theaters and producers—often those with the highest interest and the largest stake in a First Amendment controversy—would not be able to challenge government limitations on speech as substantially overbroad.

*Id.* at 505 n.11; *see also City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988) (holding that "one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.").

Case law clearly establishes that Midwest, as an advertising company, has standing to challenge the constitutionality of the sign regulations at issue in this case because the complaint in this case clearly alleges that Defendant's zoning ordinances are overbroad. *See, e.g.*, *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 407 (6th Cir. 1999) (finding that "given the First Amendment context . . . a facial challenge is appropriate, and any need for [a party] to participate in the allegedly unconstitutional [ ] process in order to establish standing is obviated."); *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (finding that advertising companies "have standing to challenge the [municipal sign] permit requirement, even though they did not apply for permits, because applying for a permit would have been futile."); *Nat'l Adver. Co. v. City of Fort Lauderdale*, 934 F.2d 283, 285 (11th Cir. 1991) (finding that advertisement company "has a commercial interest in the speech regulated by the sign code" and "has the right to assert a claim, in its own behalf and for third parties, that the code is unconstitutional."); *Nat'l Adver. Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir. 1990) (finding that "because of its commercial interest in the speech appellants seek to restrict, [advertising company] has standing to challenge the ordinances . . . . as facially invalid."). The majority's finding to the contrary plainly contravenes well-established precedent from this Court and the Supreme Court. Therefore, Midwest has overbreadth standing to challenge the Township's sign regulations. Because Plaintiffs have constitutional standing, the district court erred in dismissing this case.

### B. The First Amendment

#### 1.     Underlying Jurisprudence

"Just as the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner . . . so it does not permit municipalities to regulate methods

of expression however, whenever and wherever they wish. *Prime Media*, 398 F.3d at 818 (citing *Wheeler v. Comm'r of Highways, Commw. of Ky.*, 822 F.2d 586, 589 (6th Cir.1987)) (internal quotation marks omitted). In order to determine whether or not the municipal ordinances at issue impermissibly regulate speech in violation of the First Amendment, however, a court must first determine which level of scrutiny it should apply in weighing the Township's interest in regulating speech against Plaintiffs' interest in speaking. The courts give great deference to legislatures in most cases, generally deferring to legislative judgment so long as a law appears supported by some rational basis. *See*, *e.g.*, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981). When fundamental interests are limited by a legislative act, however, courts will apply the strictest level of scrutiny, and invalidate the law unless it is deemed necessary to serve a compelling government interest. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 199-200 (1992). Finally, the Supreme Court has also recognized some interests which, while not constituting fundamental interests triggering strict scrutiny, still must be examined under a heightened level of review. *See, e.g., McConnell*, 504 U.S. at 108.

Ordinarily, when the government seeks to regulate commercial speech which is neither misleading nor concerning illegal activity, this Court should apply an intermediate level of scrutiny in weighing the restriction. Under this intermediate scrutiny, the speech restriction will be upheld only if it 1) directly advances a substantial government interest; and 2) is not "more extensive than necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. 557, 566 (1980); *see also Edenfield v. Fane*, 507 U.S. 761, 767 (1993) ( "[L]aws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny."). "Unlike rational-basis review, [intermediate scrutiny] does not permit us to supplant the precise interests put forward by the State with other suppositions." *Edenfield*, 507 U.S. at 768. Rather, the burden rests with the Defendant to proffer the specific government interests which it deems sufficient to overcome intermediate scrutiny. *Id.* at 770-71.

Under intermediate scrutiny, "the party seeking to regulate commercial speech, [has] the burden of affirmatively establishing that the ordinance" is constitutional with respect to all aspects of this test. *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996) (citing *Bd. of Trs. of the State Univ. of N.Y.*, 492 U.S. at 480); *see also Edenfield*, 507 U.S. at 770-771 (1993) ("It is well established that [t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." (quoting *Bolger v. Youngs Drug Prod. Corp.,* 463 U.S. 60, 71 n.20 (1983)) (quotation marks omitted) (alteration in original)). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-71. "Without this requirement, [Defendant] could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Id.*

This framework was recently reaffirmed by this Court in our *en banc* decision in *Pagan v. Fruchey*. In *Pagan*, a commercial speech case that was decided by the same district court judge who decided the instant matter,[4] this Court expressly held that a municipality must produce sufficient evidence to justify the restrictions on commercial speech imposed by an ordinance. 492 F.3d at 771. This Court found that "the evidence adduced by the [municipality] [was] insufficient to satisfy [its] burden" because more than "a conclusory articulation of government interests" is required under Supreme Court precedent. *Id.* at 772-73. This Court specifically noted that the district court cannot

---

[4]Since the *en banc* Court recently decided *Pagan*, the district court did not have the benefit of *Pagan* when it was deciding the instant case.

apply a "deferential standard" or "place[ ] the burden on [Plaintiffs] to demonstrate the unconstitutionality of the ordinance." *Id.* at 773.

In *Pagan*, the municipality argued "that it would be difficult, expensive, and time-consuming to conduct studies and provide empirical evidence in support of" its zoning ordinance. *Id.* Nevertheless, this Court declined to "adopt a standard of 'obviousness' or 'commonsense,' under which [to] uphold a speech regulation in the absence of evidence of concrete harm," and found that "the Supreme Court has made quite clear that" there is an "evidentiary requirement the state must meet under intermediate scrutiny." *Id.* at 774. "[T]he standard established by the Supreme Court depends neither on obviousness nor common sense. [Supreme Court precedent] requires *some* evidence to establish that a speech regulation addresses actual harms with some basis in fact." *Id.* (emphasis in original).

As difficult as it may be for a law to survive this intermediate level of scrutiny, under certain circumstances, laws burdening commercial speech must survive an even stricter test. When a restriction on commercial or other speech engages in "content-based restriction," the law "can stand only if it satisfies strict scrutiny." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000); *see also Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 635 (1994) (noting that a regulation may "warrant strict scrutiny as a content-based regulation.").

Under strict scrutiny, a content-based restriction on speech must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see Playboy*, 529 U.S. at 813. The requirement that a restriction on speech be narrowly drawn requires the regulation to be the least restrictive alternative available. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n. 6 (1989). The Supreme Court has recognized that "it is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992). "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property . . . is presumptively impermissible, and this presumption is a very strong one." *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) (O'Connor, J., concurring).

The Supreme Court has defined laws which are content-based—and thereby are subject to strict scrutiny—as those which cannot be justified "without reference to the content of the regulated speech." *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Laws which engage in "discrimination among different users of the same medium for expression" are generally held to be content-based. *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972); *see also First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784-85 (1978) ("In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue."). Thus, for example, a law which prohibits picketing, except when engaged in as part of a labor dispute, is content-based because it gives preferential treatment to people using picketing to speak on one particular subject. *Carey v. Brown*, 447 U.S. 445, 460-61 (1980). Similarly, a law which prohibits signs critical of a foreign-government, while permitting all other signs, is content-based and must survive strict scrutiny, *Boos v. Barry*, 485 U.S. 312, 318-19 (1988), even though a law banning *all* signs would be permitted. "In short, [if] some types of signs are extensively regulated while others are exempt from regulation based on the nature of the messages they seek to convey, [a] sign code [would be] undeniably a content-based restriction on speech." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1266 (11th Cir. 2005).

Case law from our sister circuits suggests that whether or not a law which burdens commercial speech is content-based weighs heavily on whether or not a sign ordinance will survive constitutional muster. While a plurality of the Supreme Court has held that "traffic safety and the

appearance of the city are substantial government goals," and thus sufficient to satisfy intermediate scrutiny, *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507-08 (1981) (plurality opinion), at least two Courts of Appeal have questioned whether these interests are sufficient to survive strict scrutiny. *See Solantic*, 410 F.3d at 1268 (finding that a "sign code is not narrowly tailored to accomplish the City's asserted interests in aesthetics and traffic safety" and that case law "[does not] recognize[ ] those interests as 'compelling'"); *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1408 (8th Cir. 1995) ("[A] municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling.").

### 2.       The Constitutionality of the Sign Regulations

Turning now to the question of which level of scrutiny to apply to the Township's sign regulations, it is apparent that at least some of the restrictions are content-based, and thus must survive strict scrutiny.[5]  Section 314.14, for example, states that "[n]o off-premise advertising sign carrying a commercial message shall be permitted."  Section 314.30 bans "banner signs," including most flags, but creates an exception for "federal, state and local flags."  Much of § 316 creates special rules which signs containing certain content, such as "political signs" or "domestic advertising," must follow.  Section 321.1-2 permits signs that identify the name of a shopping center, but allows signs with no other content.

What all of these provisions have in common is content discrimination.  Each of them identifies particular types of signs on the basis of their content, and then creates rules specific only to those signs so identified.  These provisions are content-based, and thus are subject to strict scrutiny.  When applying strict scrutiny, the defendant bears the burden to justify its speech regulations. *Johnson v. California*, 543 U.S. 499, 505 (2005). Defendant, in the instant case, asserts that the sign regulations are necessary because of aesthetic interests and public safety concerns, but these concerns are insufficient to survive strict scrutiny.

The Eleventh Circuit's decision in *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (1993) is helpful in explaining why Defendant's aesthetic and safety concerns are insufficient to sustain the sign regulations. *Dimmitt* struck down a local ordinance limiting the kind and number of flags which the plaintiff car dealership could display. *Id.* at 1568.  The Eleventh Circuit held that the ordinance must withstand strict scrutiny, and the city responded by asserting its interests in "promoting aesthetics and in minimizing visual distractions to motorists." *Id.* at 1569.

As the Eleventh Circuit noted, "only the most extraordinary circumstances will justify regulation of protected expression based upon its content." *Id.*  The court added that  neither the need to preserve international relations nor the threat of criminal violence are sufficient grounds to allow content-based government censorship. *Id.*; *see Boos v. Barry*, 485 U.S. 312, 321-29 (1988) (prohibition on display of signs critical of a foreign government within 500 feet of foreign embassy is unconstitutional); *Brandenburg v. Ohio*, 395 U.S. 444, 446-48 (1969) (government may only forbid incitement of violence "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

---

[5]Alternatively, even assuming *arguendo* that the sign regulations are not content-based, the sign regulations would not be able to withstand the intermediate standard of review afforded to commercial speech. "Under intermediate scrutiny, the Government may employ the means of its choosing so long as the . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further that interest." *Turner*, 520 U.S. at 213-14 (internal quotation marks and citation omitted).  In the course of applying intermediate scrutiny, the district court must review evidence adduced by the parties. *See id.* at 214.  Even applying intermediate scrutiny, the sign regulations are invalid because they deter significantly more speech than necessary to protect the Township's asserted interests.

The Township's asserted interests in this case are hardly more compelling justifications for allowing such censorship than the government's interest in preserving international relations or preventing criminal violence. Accordingly, the content-based provisions of the sign regulations should be struck down as inconsistent with the First Amendment.

### C.     Prior Restraint

As an additional claim, Plaintiff alleges that the sign regulations constitute an unlawful prior restraint on speech. A prior restraint occurs when speech is conditioned on the prior approval of government officials. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). The Supreme Court has held that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976). Accordingly, "[a]ny system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity." *Freedman v. Maryland*, 380 U.S. 51, 57 (1965). In order to overcome this heavy presumption, a prior restraint scheme must possess three procedural safeguards:

> First, the decision whether or not to grant a license must be made within a specified, brief period, and the status quo must be preserved pending a final judicial determination on the merits. Second, the licensing scheme "must also assure a prompt judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." Third, the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the licensor rather than the exhibitor.

*Deja Vu of Nashville*, 274 F.3d at 400 (quoting *Freedman*, 380 U.S. at 59) (citations omitted).

As this Court held in *Deja Vu of Nashville*, "[a] 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Id.* The Township's sign regulations do just that; they require persons wanting to post signs containing protected speech to first obtain permission from government officials. Under § 325.1 of the regulations, "it shall be unlawful to erect, enlarge, expand, alter (including face changes), relocate, or reconstruct any sign without first filing with the Township Zoning Inspector an application in writing and obtaining a Zoning Certificate." (J.A. 136) In other words, a person's right to post First Amendment protected speech on a sign is contingent upon their receiving the Township's prior approval of that sign, and this restriction applies to the entirety of the sign regulations; all signs, regardless of height and area, and regardless of the content or location of the sign are subject to a prior restraint.

Furthermore, the licensing scheme lacks the third procedural safeguard required of all prior restraints. According to the sign regulations, "[a]ny party adversely affected by a decision of the [Township] may appeal to the Court of Common Pleas of Hamilton County on the ground that such decision was unreasonable or unlawful." (J.A. 118) Even assuming that this proceeding fulfils the requirement that a "prompt judicial decision" is provided "to minimize the deterrent effect of an . . . erroneous denial of a license," this process unconstitutionally places the burden of instituting judicial proceedings on the shoulders of the person restrained by the sign regulations. This process flies in the face of this Court's holding that "the licensing scheme must place the burden of instituting judicial proceedings . . . on the licensor rather than the exhibitor." *Deja Vu of Nashville*, 274 F.3d at 400; *see Freedman*, 380 U.S. at 59.

Additionally, the sign regulations may violate the first *Freedman* prong's requirement that "the decision whether or not to grant a license must be made within a specified, brief period." *Id.* According to the regulations, a zoning inspector must approve or deny an application for a permit

to erect a sign within 15 business days of its filing. An adverse decision may then be appealed within 20 days of this decision. Upon receiving notice of such an appeal, the Board of Zoning Appeals must "fix *a reasonable time* for the hearing of the appeal," (J.A. 118) (emphasis added), and give any interested parties 10 days notice before convening a hearing. A party adversely affected may appeal through the state courts system.

Under this process, the swiftest application will languish for almost a month in the administrative process. Furthermore, because the Board of Appeals must only "fix a reasonable time for the hearing of the appeal," there is no specified period within which the decision to grant or deny a license must be made. Under *Freedman*, a prior restraint scheme must ensure that "within a specified brief period, [the government will] either issue a license or go to court to restrain" the undesired speech. 380 U.S. at 60. This scheme, however, provides for nothing of the sort. A promise of a hearing within a "reasonable time" does not meet the requirement that either a license is issued or a court preceding initiated "within a *specified* brief period."

The sign regulations constitute a prior restraint on speech. Furthermore, they lack the necessary procedural safeguards to render such a scheme constitutional. Accordingly, this Court should declare them unconstitutional.

### D. Severance Analysis

Having determined both that portions of the sign regulations engage in unconstitutional content discrimination, and that the overall scheme constitutes a prior restraint, the regulations must next be examined to determine whether the unconstitutional provisions of the ordinance may be severed from the portions which do not violate the Constitution. *See, e.g., Alaska Airlines v. Brock,* 480 U.S. 678, 684 (1987); *Regan v. Time,* 468 U.S. 641, 652 (1984); *see also United States v. Booker*, 543 U.S. 220, 282 (2005) (Scalia, J., dissenting) ("Usually the Court first declares unconstitutional a particular provision of law, and only then does it inquire whether the remainder of the statute can be saved.").

### 1. The Content-Based Provisions

As a general rule, the severability of a local ordinance is a question of state law. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). The Ohio Supreme Court has established a three-part test for determining whether an unconstitutional provision may be severed from a larger legislative scheme:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State v. Hochhausler*, 668 N.E.2d 457, 466-67 (Ohio 1996) (citations omitted).

Applying this test reveals that much of the content-neutral portions of the sign regulations are severable from the content-based provisions. The sign regulations are structured largely by classifying different kinds of signs by names such as "bench billboard sign," "free standing sign," or "political sign." (J.A. 119-24) Different rules are then applied to each of these classifications. While some of these categories, such as "political signs" are content-based, others, such as "free standing signs" are content-neutral. Most of the rules governing these content-neutral categories are likewise content-neutral. Section 321.2-2, for example, places content-neutral restrictions on

"[a]ll freestanding pole signs" in certain portions of Symmes Township. (J.A. 132) Under this section:

> 1. No freestanding pole sign shall be closer than ten (10) feet to any right of way line.
>
> 2. No freestanding pole sign shall be closer than twenty (20) feet to any adjacent property line.
>
> 3. No freestanding pole sign located three hundred (300) feet from the right of way of a federal interstate highway shall exceed forty-five (45) feet in height from the finished grade level and no sign within six hundred fifty (650) feet from the right of way of a federal interstate highway shall exceed twenty (20) feet in height from the finished grade level.
>
> 4. No freestanding pole sign shall contain more than one hundred twenty (120) square feet of sign area per side (maximum two sides)

(J.A. 132)

These provisions meet all three prongs of the Ohio severability test. These height, area and distance limits each may be read independent of the remainder of the sign regulations and still be given their full meaning. Furthermore, they give effect to an express purpose of the sign regulations, "to establish reasonable regulations governing the size, character, and location of signs within the Township." (J.A. 119) Finally, no insertion of words or terms is necessary to separate them from other, content-based portions of the ordinance. Accordingly, were the sign regulations' content discrimination their only constitutional flaw, it would be possible to sever the content-neutral provisions and give them their full effect.

### 2. The Prior Restraint Provisions

The sign regulations, however, also constitute an unconstitutional prior restraint, and this alone is sufficient to declare them unconstitutional in their entirety. In *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson County*, we held a prior restraint affecting "sexually oriented" businesses unconstitutional for lack of sufficient judicial process. 274 F.3d at 402-03. Rather than allow some portions of the law to be severed, *Deja Vu of Nashville* held that when a prior restraint lacks the proper judicial safeguards, this "renders the entire statute facially unconstitutional." *Id.* at 403. Under such circumstances, this Court has no choice but to "enjoin enforcement of the entire Ordinance." *Id.*; *see City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757-59 (1988) (holding that a licensing scheme containing a prior restraint is unconstitutional on its face and must be struck down in its entirety).

Just like the ordinance in *Deja Vu of Nashville*, the instant sign regulations constitute a prior restraint lacking sufficient judicial safeguards. Accordingly, we are bound by *Deja Vu of Nashville*, and may not sever any portion of the Township's ordinance, and must declare it unconstitutional in its entirety.

### E.        Damages

Lastly, the majority does not address the district court's summary denial of Plaintiffs claim for damages. Plaintiffs argue that they should be compensated for the damages they suffered as a result of the enforcement of the unconstitutional sign regulations. The Supreme Court has held that "'the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused

by the deprivation of constitutional rights.'" *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (quoting *Carey v. Piphus,* 435 U.S. 247, 254 (1978)). However, "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Id.* at 112.

The Township's post-lawsuit amendment to its sign regulations has no effect on the damages claims. *See, e.g.*, *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001) ("for so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."); *see Memphis Light Gas & Water Div. v. Craft*, 436 U.S. 1, 8 (1978) ("damages arising from [defendant's] termination of service saves this cause from the bar of mootness."); *see also Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005). Indeed, courts allow damages, under 42 U.S.C. § 1983, against municipalities for the enforcement of unconstitutional zoning ordinances. *See Oldsmar*, 475 F. Supp. 2d at 1253 (holding that plaintiff is entitled to the full measure of monetary damages available after successfully challenging a content-based sign ordinance). At a minimum, where a deprivation of rights has occurred, nominal damages must be awarded, *see, e.g.*, *Ferrar*, 506 U.S. at 112, but such a nominal award may not be sufficient in this case. Plaintiffs have experienced an ongoing and costly deprivation of their First Amendment rights, for which they may be entitled to compensation. Since Plaintiffs may seek damages for the violation of their constitutional rights, the district court erred in summarily denying Plaintiffs' claim for damages.

## CONCLUSION

Plaintiffs have pled and sufficiently demonstrated standing to challenge the sign regulations. Additionally, the sign regulations cannot withstand constitutional review and are not severable. For the foregoing reasons, I would reverse the district court's decision and remand this case to the district court for further proceedings consistent with opinion.